COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

                                        NO.
 2-06-472-CV

 

GERALD W. HADDOCK                                                         APPELLANT

 

                                                   V.

 

WILLIAM F. QUINN, PAUL E. ROWSEY, III,                               APPELLEES

JOHN GOFF, TERRY N.
WORRELL, 

CRESCENT REAL ESTATE
EQUITIES 

COMPANY, CRESCENT REAL
ESTATE 

LIMITED PARTNERSHIP AND
CRESCENT 

REAL ESTATE EQUITIES,
LTD.

 

                                              ------------

 

            FROM THE 67TH
DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                                 AND

 

                                        NO.  2-07-048-CV

 

IN
RE GERALD W. HADDOCK                                                   RELATOR

 

                                              ------------

 

                                    ORIGINAL
PROCEEDING

 

                                              ------------

 

                                              OPINION

 








I.                  
Introduction

In
this consolidated interlocutory appeal and mandamus proceeding, Relator and
Appellant Gerald W. Haddock seeks relief from the trial court=s order staying arbitration
proceedings that he initiated against Appellees and Real Parties in Interest
William F. Quinn, Paul E. Rowsey, III, John Goff, Terry N. Worrell, Crescent
Real Estate Equities Company (ACEI@), Crescent Real Estate Equities Limited Partnership (ACREELP@), and Crescent Real Estate Equities, Limited (ACREE@).

Haddock
raises three issues.  In his first issue,
Haddock argues that the trial court improperly assumed jurisdiction because the
parties contracted to have all issuesCincluding questions of arbitrabilityCdecided by arbitration.  Second, Haddock contends that even if the
trial court had jurisdiction to decide some issues of arbitrability, the main
issue in this caseCwhether he repudiated or waived
arbitrationCshould be decided by an
arbitrator.  Third, Haddock argues that
the trial court erred and abused its discretion by concluding that he
repudiated or waived arbitration by engaging in prior litigation that was
inconsistent with arbitration.








Real
Parties in Interest contend that the issue of repudiation or waiver was
properly for the court to decide and that the trial court correctly determined
that Haddock repudiated, or in the alternative waived, arbitration of his
claims by substantially invoking the judicial process to their detriment.  They argue that the trial court correctly
concluded that the remaining claims asserted by Haddock, individually and derivatively
on behalf of CEI stockholders and against nonsignatories, are not within the
scope of the arbitration agreement.

II.               
Factual
and Procedural Background

A.              
The
Parties

1.               
The
Crescent Entities

CEI
is a publicly held real estate investment trust (commonly referred to as a AREIT@) organized under the laws of the state of Texas.  CEI is structured as an Umbrella Partnership
Real Estate Investment Trust whereby CEI owns a majority of the limited
partnership interests in CREELP, a Delaware limited partnership.  This organizational structure (referred to as
an AUPREIT@) allows owners of investment real estate to sell their
properties to CREELP in exchange for CREELP units, which the seller may later
convert into CEI common stock.  The real
estate owners incur no income tax liability until they sell the stock.  CREE, a Delaware corporation, is a wholly
owned subsidiary of CEI and serves as CREELP=s general partner.








2.               
The
Individuals 

In
1994, Haddock and two cofounders created the Crescent Entities and related
companies.  Prior to 1994, Haddock had
served in various capacities in companies formed by one of the cofounders,
including serving as lead transactional attorney and chief negotiator.  Of the individual Real Parties in Interest,
John Goff currently serves as CEI=s CEO and Vice Chairman. 
William Quinn, Paul Rowsey III, and Terry Worrell serve as members of
CEI=s Board of Trust Managers.

B.               
The
CREELP Partnership Agreement and Arbitration Clause

In
February 1994, Haddock, as CEI=s President, signed a limited
partnership agreement on behalf of CEI, CREE, and several limited partners to
form the CREELP limited partnership. 
CREE was CREELP=s general partner.  Haddock became a limited partner in CREELP as
well as President of CEI, and he became CEO of CEI in 1996.  As an officer and senior management employee,
Haddock received options to purchase units in CREELP in 1995 and 1996, which
were exchangeable for CEI common stock. 
The options for both the CREELP units and CEI stock were created by
incentive plans adopted by those entities= respective governance committees.








The
original CREELP limited partnership agreement did not contain an arbitration
agreement.  However, in May 1994, the
limited partnership agreement was amended to add an arbitration agreement that
provides, in pertinent part:[1]

Section 16.1       Arbitration

Notwithstanding anything to the contrary contained in
this Agreement, all claims, disputes and controversies between the parties
hereto (including, without limitation, any claims, disputes, and controversies
between the Partnership and any one or more of the Partners and any claims,
disputes and controversies among any two or more Partners) arising out of or in
connection with this Agreement or the Partnership created hereby, relating to
the validity, construction, performance, breach, enforcement or termination
thereof, or otherwise, shall be resolved by binding arbitration in the State of
Texas, in accordance with this Article 16 and, to the extent not inconsistent
herewith, the Expedited Procedures and Commercial Arbitration Rules of the
American Arbitration Association.

 

The arbitration
agreement contains additional paragraphs of detailed procedures to be followed
in any arbitration proceedings under the agreement, including an expedited
schedule for selection of an arbitration panel, for commencement and completion
of the arbitration proceeding within sixty days after selection, and for
rendition by the panel of its award within thirty days thereafter.








C.              
The
Severance Agreement     

In
June 1999, Haddock resigned from his executive positions and entered into a
confidential severance agreement with CEI and CREELP, which provided for him to
receive certain cash compensation and which, together with simultaneously
executed amended unit option and stock option agreements, accelerated the
vesting of certain of his CREELP unit options and CEI stock options that he had
previously received as part of his compensation.  The agreement called for Haddock to
relinquish all of his remaining unvested unit options and stock options.  Paragraph 13 of the severance agreement (the Aunfavorable-comments clause@) restricted both Haddock and the
Crescent Entities from making unfavorable comments about the other or about
Haddock=s job performance.  The severance agreement did not contain an
arbitration clause.

D.              
The
Prior Lawsuit








In
March 2005, Haddock filed a suit for a declaratory judgment and for temporary
and permanent injunctions against the Crescent Entities in the 17th District
Court of Tarrant County, Texas.  Haddock
pleaded his prior status as CEO and President of CEI, CREE, and other related
entities referred to in his petition as Athe Employer Group,@ that he and the Employer Group had agreed to terminate his
employment relationship in June 1999, and that the parties had entered into a
confidential severance agreement that he would file under seal with the
court.  Haddock stated that as
consideration for his resignation from all directorships and offices held in
the Employer Group, the severance agreement provided that, in addition to stock
and units in CEI and CREELP that he already owned, he was promised certain cash
compensation as well as the accelerated vesting of certain stock and
partnership unit options and that he thereby became immediately vested in a
large number of stock and unit options in both CEI and CREELP.

In
his petition, Haddock further explained that he had become Aconcerned@ that the Crescent Entities were
being managed and operated adversely to interests of shareholders and unitholders
by offering executives excessive compensation packages and risky loans that
seriously jeopardized the financial health and stability of the entities.  Haddock alleged that he desired to discuss
these concerns with fellow shareholders and unitholders and to further
investigate but feared that doing so might be construed by the Crescent
entities as a breach of the unfavorable comments clause in the severance
agreement. Haddock alleged that he had received threats that the Crescent
Entities would forfeit his options as a result of his conduct in discussing
those matters and exposing their Aquestionable practices.@








Haddock
sought to clarify or reform the severance agreement by a declaratory judgment
that the unfavorable comments clause of the severance agreement was void or
limited to statements rising to the level of actionable defamation.  He also sought and obtained a temporary
restraining order against the Crescent Entities from A[t]hreatening or taking any action to
declare forfeited or interfere with@ his rights in any shares of CREE or CREELP, already owned by
him or shares or units subject to an unexercised option held by him.  The restraining order granted by the trial
court also provided that all parties were to abide by the unfavorable-comments
clause.  The parties later agreed to an
order extending the temporary restraining order until the date of trial,
originally scheduled for August 29, 2005.

The
Crescent Entities filed a counterclaim asserting that Haddock had breached the
terms of both the severance agreement and a subsequent 2001 settlement
agreement, general release, and covenant not to sue for claims and causes of
action in any way connected with his prior employment or termination.








In
June 2005, Haddock filed a motion to clarify or modify the temporary
restraining order, alleging that he proposed to exercise his rights as a
unitholder in CREELP and the right to have the value of his options adjusted in
accordance with Arelevant agreements and plans@ under which the options were
created.  Haddock alleged in that motion
that he had reason to believe he had one or more common law and statutory
causes of action against the Crescent Entities related to management and
desired Ato assert these claims in this suit,
or in another suit.@ 
Haddock requested in his motion that the court remove all doubt that
filing those lawsuits would not violate the terms of the severance agreement
and that it either clarify or modify the temporary restraining order to permit
him to file the lawsuits. 

Haddock
subsequently filed two motions for summary judgment, one as to the
enforceability of the severance agreement and the other as to the Crescent
Entities= counterclaim; the Crescent Entities
likewise moved for summary judgment. 
After a two-day hearing, the trial court signed a final judgment on
December 1, 2005, ordering that Haddock and the Crescent Entities take nothing
on their respective claims and counterclaims. 
Haddock appealed to this court from the take-nothing summary judgment
against him, but he later moved to dismiss the appeal, and we dismissed it on
April 6, 2006.  See Haddock v.
Crescent Real Estate Equities Co., No. 02-06-00096-CV, 2006 WL 909470, at
*1 (Tex. App.CFort Worth Apr. 6, 2006, no pet.).

E.               
The
Arbitration Demand








On
December 6, 2005, six days after the trial court signed its final judgment,
Haddock wrote to the CEI Compensation Committee, requesting that it adjust the
exercise price for his options pursuant to the antidilution provisions of the
stock and unit option plans, which request was refused.  Thereafter, according to Haddock, CREELP and
CEI continually refused to allow him to exercise CREELP unit options and to
exchange them for CEI stock.

On
July 10, 2006, Haddock filed a forty-three page Statement of Claims with the
American Arbitration Association under the arbitration provision contained in
the CREELP limited partnership agreement. 
In his Statement of Claims, Haddock asserted causes of action against
all of the Crescent Entities as well as the individual Real Parties in Interest
for breach of contract, breach of the duty of good faith and fair dealing,
violation of securities laws, and breach of fiduciary duty.  As in his prior suit, Haddock set forth the
events regarding his resignation as director and officer from the Crescent
Entities in 1999, and alleged that since that time, those entities= operations had declined and the
entities had begun to liquidate their real estate properties, using the
proceeds to continue to award extraordinary dividends to stockholders, thereby
diluting the value of his CREELP unit options.








Haddock
further alleged that the Entities= Compensation Committee refused to adjust the exercise price
of his options as provided by anti-dilution provisions in the option
agreements, prevented him from converting his options to CEI common stock, and
refused to allow him to exercise his options with a recourse promissory note as
provided by the CREELP unit option agreement, resulting in damages of over $8.2
million.  Haddock also asserted a claim,
in a derivative capacity on behalf of CEI shareholders, asserting that loans to
company insiders violated the Sarbanes-Oxley Act, resulting in damages to the
shareholders of at least $39.7 million, including lost interest.  He named Quinn, Rowsey, and Worrell as parties
based upon their service on a Special Litigation Committee for the Crescent
Entities that refused his demand regarding the derivative claim.

F.                
The
Underlying Proceeding

Real
Parties in Interest filed this action in the 67th District Court of Tarrant County
seeking a stay of the arbitration proceedings and a declaratory judgment that
Haddock had repudiated the CREELP arbitration agreement by filing his March
2005 suit and proceeding to a final judgment rather than arbitrating the issues
in that case and that the remaining claims were not within the scope of the
arbitration agreement.  Haddock answered
with a general denial and a plea to the jurisdiction asserting that the trial
court lacked jurisdiction to decide any issues of arbitrability, including waiver
or repudiation.  Alternatively, he
asserted that even if the court had jurisdiction over some arbitrability
issues, its jurisdiction was limited in scope and did not allow it to decide
the waiver or repudiation issue.








After
a hearing on the application to stay arbitration, the trial courtCthe presiding judge being the same
judge who had earlier entered the temporary restraining order in the prior
suit, sitting for the regular judge of the 17th District CourtCsigned an order granting the stay and
permanently enjoining Haddock from pursuing his arbitration demand.  After Haddock perfected his appeal in this
case, the trial court filed findings of fact and conclusions of law, finding
that Haddock had repudiated the CREELP arbitration agreement by litigating the
March 2005 suit to a final judgment, that he was estopped from relying on the
arbitration agreement, that Real Parties in Interest accepted that repudiation
by defending against Haddock=s claims and filing a counterclaim,
and that Real Parties in Interest suffered prejudice.

Haddock
seeks review of the trial court=s order both by petition for writ of
mandamus and by interlocutory appeal.  We
have consolidated the two proceedings for a decision disposing of both
simultaneously.  See In re Valero
Energy Corp., 968 S.W.2d 916, 916B17 (Tex. 1998) (orig. proceeding).  The trial court has stayed all proceedings in
this case pending the outcome of the mandamus proceeding and interlocutory
appeal.








III.             
Discussion

A.              
Mandamus
or Interlocutory Appeal?

The
parties agree that the Federal Arbitration Act (AFAA@) applies to the arbitration
agreement in this case.  See generally
9 U.S.C. '' 1B16 (West 2009).  A
party seeking relief pursuant to the FAA from a denial or stay of arbitration
must pursue relief by way of petition for writ of mandamus.  In re D. Wilson Constr. Co., 196
S.W.3d 774, 780 (Tex. 2006) (orig. proceeding) (AMandamus is proper to correct a clear abuse of discretion
when there is no adequate remedy by appeal, . . . as when a party is denied its
contracted-for arbitration rights under the FAA.@); In re Valero Energy Corp., 968 S.W.2d at 917
(holding mandamus available for denial of arbitration because party has no
remedy by appeal under FAA); Jack B. Anglin Co. v. Tipps, 842 S.W.2d 266,
272 (Tex. 1992) (orig. proceeding); see also W. Dow Ham III Corp. v.
Millennium Income Fund, L.L.C., 237 S.W.3d 745, 751 (Tex. App.CHouston [1st Dist.] 2007, no pet.)
(holding mandamus only means of reviewing order granting stay of
arbitration).  Therefore, we will dismiss
the interlocutory appeal for want of jurisdiction and proceed to determine
whether Haddock as Relator is entitled to mandamus relief.  See Tex. R. App. P. 42.3(a), 43.2(f).








B.               
Standard
of Review

Mandamus
will issue to correct a clear abuse of discretion for which the remedy by
appeal is inadequate.  In re
Prudential Ins. Co. of Am., 148 S.W.3d 124, 135B36 (Tex. 2004).  A trial court has no discretion in
determining what the law is or in applying the law to the facts, and a clear
failure to analyze or apply the law correctly will constitute an abuse of
discretion.  Walker v. Packer, 827
S.W.2d 833, 840 (Tex. 1992).  When a
motion to compel arbitration under the FAA has been erroneously denied or when
a motion to stay arbitration is erroneously granted, there is no adequate
remedy by appeal, and mandamus will issue. 
In re D. Wilson Constr. Co., 196 S.W.3d at 780; see also In
re Nexion Health at Humble, Inc., 173 S.W.3d 67, 69 (Tex. 2005) (orig.
proceeding) (per curiam).








A
party seeking to enforce an arbitration agreement must establish the existence
of a valid arbitration agreement and show that the claims in dispute fall
within the scope of that agreement.  In
re Bank One, N.A., 216 S.W.3d 825, 826 (Tex. 2007) (orig. proceeding) (per
curiam); In re Kellogg Brown & Root, Inc., 166 S.W.3d 732, 737 (Tex.
2005) (orig. proceeding); see BWI Cos., Inc. v. Beck, 910 S.W.2d 620,
621 (Tex. App.CAustin 1995, orig. proceeding).  In determining the validity of arbitration
agreements under the FAA, we generally apply state-law principles governing the
formation of contracts.  In re Palm
Harbor Homes, Inc., 195 S.W.3d 672, 676 (Tex. 2006) (citing First
Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944, 115 S. Ct. 1920,
1924 (1995)).

Once
the moving party establishes the existence of a valid arbitration agreement,
the trial court then determines whether the nonmovant=s claims fall within the scope of the
arbitration clause.  In re FirstMerit
Bank, N.A., 52 S.W.3d 749, 753 (Tex. 2001) (orig. proceeding).  If the trial court determines that a valid
arbitration agreement exists, the burden shifts to the party opposing
arbitration to prove its defenses.  J.M.
Davidson, Inc. v. Webster, 128 S.W.3d 223, 227 (Tex. 2003).  Whether a valid arbitration agreement exists
is a legal question subject to de novo review. 
In re D. Wilson Constr. Co., 196 S.W.3d at 781.

C.              
The
Arbitration Agreement








Haddock
contends by his first issue that repudiation and waiver are matters of
substantive arbitrability and that the parties clearly and unmistakably agreed
to have all issues, including questions of arbitrability, decided by an
arbitrator.  Therefore, he asserts, the
trial court lacked jurisdiction to decide the issues of repudiation and
waiver.  Real Parties in Interest contend
that no valid arbitration agreement continued to exist because Haddock Arepudiated@ it by filing the prior lawsuit.  They argue that when Haddock commenced the
prior lawsuit, the Crescent Entities were put to an Aelection@ to either terminate or insist on
performance of the arbitration agreement and that, by filing a counterclaim and
allowing the prior lawsuit to go to final judgment, the Crescent Entities and
Haddock mutually terminated the arbitration agreement.

1.               
The
issue is waiver, not repudiation by election.

In
findings of fact[2]
and conclusions of law that it entered after the parties filed their briefs in
this court and that have not been challenged by either party, the trial court
found in favor of Real Parties in Interest that Haddock 








repudiated the Arbitration Agreement by filing and
prosecuting the Prior Lawsuit to a final judgment.  The Crescent Entities accepted that
repudiation by defending against Haddock=s claims . . . and by prosecuting a counterclaim.  The Arbitration Agreement ceased to exist as
between these parties on or before April 6, 2006, the date Haddock dismissed
his appeal of the Prior Lawsuit.[3]

 

To
support their argument that Haddock repudiated the arbitration agreement, Real
Parties in Interest rely on Vireo, P.L.L.C. v. Cates, 953 S.W.2d 489,
491 (Tex. App.CAustin 1997, pet. denied).  In Vireo, the Austin court held that
when a plaintiff filed suit on an arbitrable claim, the defendant had an
election to insist or not on arbitration; when the defendant elected not to
arbitrate, the parties therefore mutually repudiated the arbitration
agreement.  Id.








Although
the Supreme Court of Texas has not spoken on this issue, Vireo=s approach, that of Amutual repudiation and waiver based on election@ when a plaintiff files suit and then
seeks arbitration, has been rejected by this court on two occasions as well as
by other Texas courts of appeals.  See
Grand Homes, 96, LP v. Loudermilk, 208 S.W.3d 696, 704 (Tex. App.CFort Worth 2006, pet. denied) (noting
that Vireo holding would undermine policy promoting arbitration and
observing that TGAA was enacted to abrogate common law Aright of election@ doctrine in arbitration context); see
also Wee Tots Pediatrics v. Morohunfola, 268 S.W.3d 784, 792 n.4 (Tex. App.CFort Worth 2008, no pet.) (again
declining to follow Vireo); Practicehwy.com, Inc. v. Albany IVF
Fertility and Gynecology, PLLC, No. 05-06-00222-CV, 2006 WL 2960838, at
*3  (Tex. App.CDallas Oct. 18, 2006, no pet.) (mem.
op.) (rejecting Vireo as conflating repudiation and waiver).  We decline to revisit this issue.  We hold that the trial court abused its
discretion by basing its order staying arbitration on mutual repudiation of the
arbitration agreement.  However, this is
but the beginning of our inquiry.








In
addition to asserting repudiation, Real Parties in Interest contend that
Haddock waived the arbitration agreement by inconsistent conduct in the prior
lawsuit that resulted in prejudice to them. 
The trial court made additional findings that Haddock=s conduct in filing and prosecuting
the prior lawsuit to final judgment substantially invoked the litigation
process and prejudiced the Crescent Entities. 
In Perry Homes v. Cull, handed down after briefs were filed and
after submission in this court, the Supreme Court of Texas extensively
addressed the defense of waiver of arbitration by substantially invoking the
judicial process to the other party=s detriment or prejudice. 
258 S.W.3d 580, 589B90 (Tex. 2008), cert. denied,
129 S. Ct. 952 (2009).  By postsubmission
supplemental briefs, the parties have joined issue on whether Haddock waived
his right to arbitration by inconsistent litigation conduct, although Real
Parties in Interest still say this is an issue of both waiver and repudiation.[4]

2.               
The
trial court has jurisdiction to decide waiver.








As
a threshold issue, Haddock argues that the trial court lacked subject matter
jurisdiction to decide the issue of waiver. 
Federal and state courts have concurrent jurisdiction to enforce the
FAA.  In re Palacios, 221
S.W.3d 564, 565 (Tex. 2006) (orig. proceeding); In re Kellogg Brown &
Root, Inc., 166 S.W.3d at 739 (citing Moses H. Cone Mem=l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 26 n.32, 103 S. Ct.
927, 942 n.32 (1983)).  Waiver in the
context of this case is a question of arbitrability, and who decides
arbitrability is a matter of contract interpretation regarding the division of
labor or responsibility between the court and the arbitrator, not jurisdiction.
 See Howsam v. Dean Witter Reynolds,
Inc., 537 U.S. 79, 83, 123 S. Ct. 588, 592 (2002) (characterizing
presumption that questions of arbitrability are to be presented to court unless
parties have clearly and unmistakably agreed otherwise as Ainterpretive rule@); Marie v. Allied Home Mtg. Corp.,
402 F.3d 1, 3 (1st Cir. 2005) (noting question of who decides waiver is one of Adivision of labor@ between courts and arbitrators).

We
recently decided this very issue against Haddock=s position in another case.  Nw. Constr. Co. v. Oak Partners, L.P., 248
S.W.3d 837, 847 (Tex. App.CFort Worth 2008, pet. denied)
(holding question of who decides issue of waiver of arbitration not one of
subject matter jurisdiction).  We hold
that the trial court had jurisdiction to decide the issue of waiver.[5]

3.               
Who decides the question of waiver by inconsistent conduct?








Haddock
next argues that who decides the question of waiver is a matter of contract and
that the parties to this arbitration agreement clearly and unmistakably
referred all questions of arbitrability to an arbitration panel.[6]  We agree that Aarbitration is a matter of contract.@ 
Howsam, 537 U.S. at 83, 123 S. Ct. at 591.  The question of A>who has the primary power to decide
arbitrability= turns upon what the parties agreed
about that matter.@ 
First Options, 514 U.S. at 944, 115 S. Ct. at 1923.

There
is a Aqualification@ to that general rule, which is also
an exception to the liberal policy favoring arbitration agreements.  Howsam, 537 U.S. at 83, 123 S. Ct. at
591.  AThe question whether the parties have submitted a particular
dispute to arbitration, i.e., the question of arbitrability, is >an issue for judicial determination
[u]nless the parties clearly and unmistakably provide otherwise.=@ Id. (quoting AT & T
Techs., Inc. v. Commc=ns Workers, 475 U.S. 643, 649, 106 S. Ct. 1415,
1418 (1986)); see also First Options, 514 U.S. at 944, 115 S. Ct. at
1924; In re Weekley Homes, L.P., 180 S.W.3d 127, 130 (Tex. 2005) (A[A]bsent unmistakable evidence that
the parties intended the contrary, it is the courts rather than the arbitrators
that must decide >gateway matters,= such as whether a valid arbitration
agreement exists.@).








In
First Options, the Supreme Court noted, in discussing the Aclear and unmistakable evidence@ requirement, that Athe law treats silence or ambiguity
about the question >who (primarily) should decide
arbitrability= differently from the way it treats
silence or ambiguity about the question whether a particular
merits-related dispute is arbitrable because it is within the scope of a valid
arbitration agreement,=@ so as to not Aforce unwilling parties to arbitrate
a matter they reasonably would have thought a judge, not an arbitrator, would
decide.@ 
514 U.S. at 944B45, 115 S. Ct. at 1924B25.

a.                
No Aclear
and unmistakable@ evidence of agreement to delegate questions of
arbitrability to arbitrator

 

Haddock
argues that the arbitration agreement of the limited partnership agreement Aclearly and unmistakably@ delegates arbitrability issues,
including waiver, to an arbitration panel by expressly incorporating the
Commercial Arbitration Rules of the American Arbitration Association (AAAA@).  Specifically,
Haddock relies upon Rule 7(a) of those rules, which provides that the
arbitrator Ashall have the power to rule on his
or her own jurisdiction, including any objections with respect to the
existence, scope, or validity of the arbitration agreement.@ 
American Arbitration Association, Commercial Arbitration Rules and
Mediation Procedures, R7, http://www.adr.org/sp.asp?id=22440#R7 (last accessed
February 25, 2009).








Real
Parties in Interest respond that the supreme court in Perry Homes has
now decided, contrary to Haddock=s position, that the issue of waiver in a case governed by
the FAA is for the court, not an arbitrator. 
258 S.W.3d at 587.  Although we
agree that this was the holding in Perry Homes, the arbitration
agreement at issue in that case contained no reference to the AAA rules.  And the supreme court in that case noted,
albeit in another section of its opinion, that there was no indication in that
contract that the parties had Aclearly and unmistakably agreed@ that the arbitrator should decide
arbitrability.  Id. at 587, n.15
(citing First Options, 514 U.S. at 947B48, 115 S. Ct. at 1924). 
Therefore, we do not read Perry Homes as abandoning the Aclear and unmistakable@ qualification to the presumption
that the court is to decide issues of arbitrability.








The
majority of courts have concluded that express incorporation of rules
empowering the arbitrator to decide arbitrability (including ruling upon his or
her own jurisdiction) clearly and unmistakably evidences the parties= intent to delegate issues of
arbitrability to the arbitrator.  See,
e.g., Qualcomm Inc. v. Nokia Corp., 466 F.3d 1366, 1372B73 (Fed. Cir. 2006) (holding
incorporation of AAA rules, including Rule 7(a), clearly and unmistakably
showed parties= intent to delegate issue of
arbitrability to arbitrator); Contec Corp. v. Remote Solution Co., 398
F.3d 205, 208 (2nd Cir. 2005) (holding that incorporation of AAA Rules,
including Rule 7(a), clearly and unmistakably evinced intent for arbitrator to
decide whether nonsignatory party bound by arbitration agreement); Terminix
Int=l Co., L.P. v. Palmer Ranch Ltd. P=ship, 432 F.3d 1327, 1332B33 (11th Cir. 2005) (holding by
incorporating AAA Rules into agreement, parties clearly and unmistakably agreed
arbitrator should decide whether arbitration clause was valid);
Citifinancial, Inc. v. Newton, 359 F. Supp.2d 545, 549B52 (S.D. Miss. 2005) (same); see
also Burlington Res. Oil & Gas Co. L.P. v. San Juan Basin Royalty Trust,
249 S.W.3d 34, 40 (Tex. App.CHouston [1st Dist.] 2007, pet.
denied) (collecting cases).

But
the majority view does not Amandate that arbitrators decide
arbitrability in all cases where an arbitration clause incorporates the AAA
rules.@ 
San Juan Basin, 249 S.W.3d at 42 (quoting James & Jackson,
LLC v. Willie Gary, LLC, 906 A.2d 76, 78, 80 (Del. 2006)).  Haddock points out that, in James &
Jackson, the Delaware Supreme Court adopted the majority federal rule that
incorporation of AAA rules requires submission of issues of arbitrability to
the arbitrator rather than the court. 
906 A.2d at 80B81. 
However, the court in that case also held that this rule would only
apply in cases where (1) an arbitration clause generally provides for
arbitration of all disputes and also (2) incorporates a set of
arbitration rules that empowers arbitrators to decide arbitrability.  Id. 
Because the arbitration agreement there did not generally provide for
arbitration of all disputes but expressly allowed the parties to seek
injunctive relief and specific performance in the courts, the court held that
something other than mere incorporation of AAA rules would be needed in order
to establish clear and unmistakable intent to delegate issues of arbitrability
to the arbitrator.  Id. at 81.








In
Marie v. Allied Home Mortgage Corp., the arbitration clause referred to
binding arbitration Aany and all disputes, claims (whether
in tort, contract, statutory, or otherwise), and disagreements concerning the
interpretation or application of this Agreement . . . including the
arbitrability of any such controversy or claim.@ 402 F.3d at 14-15.  The First Circuit in that case acknowledged
that, while the issue of waiver by litigation conduct is presumptively for the
court, the parties may by agreement shift the waiver issue to an arbitrator by
clear and unmistakable expression of intent in the agreement.  Id. at 14 (citing First Options,
514 U.S. at 945, 115 S. Ct. at 1925). 
But the court held in that case that express delegation of Aarbitrability@ issues to the arbitrator in the
arbitration agreement at issue there did not evince Aclear and unmistakable@ intent for the arbitrator to decide
the issue of waiver by litigation conduct. 
Id. at 15.  The court in Marie
noted that the arbitration agreement at issue there also incorporated the
AAA rules but that it was silent regarding whether the issue of waiver or any
similar issue was intended to be referred to an arbitrator.  Id.

The
court in Marie did not expressly decide the effect of the incorporation
of the AAA rules but broadly held as follows:








We cannot say that
the use of the term [arbitrability] here evinces a clear and unmistakable
intent to have waiver issues decided by the arbitrator.  There are no references to waiver or similar
terms anywhere in the arbitration agreement. 
Neither party should be forced to arbitrate the issue of waiver by
conduct without a clearer indication in the agreement that they have agreed to
do so.  The issue of who would decide
such a question is an >arcane= one that employees are unlikely to have considered
unless clearly spelled out by the employer.

 

Id.

The
Third Circuit has followed Marie in Ehleiter v. Grapetree Shores,
Inc., holding that waiver by litigation conduct inconsistent with
arbitration is presumptively an issue for the court.  482 F.3d 207, 222 (3rd Cir. 2007).  It additionally held that, even though the
arbitration agreement there expressly stated that all claims or matters arising
out of or relating in any fashion to the agreement Ashall be considered arbitrable@ including Athe issue of arbitrability of any
claim or dispute,@ the agreement did not manifest a
clear and unmistakable intent to have an arbitrator decide the issue of waiver
based on litigation conduct.  Id.
at 221.  The court reasoned:

[W]e do not believe
that this provision . . .  evidences a
clear and unmistakable intent to have an arbitrator decide procedural questions
of arbitrability that arise only after the parties have bypassed a gateway
determination of substantive arbitrability by the arbitrator and actively
litigated the underlying dispute in court.

 








Id. at 222.  The court in Ehleiter also noted that
there was no reference to waiver of arbitration in the agreement.  Id. 
That court refused to interpret the agreement=s Asilence regarding who decides the waiver issue@ as giving arbitrators that power A>for doing so . . . [would] force [an]
unwilling part[y] to arbitrate a matter [he] reasonably would have thought a
judge, not an arbitrator, would decide.=@  Id. (quoting First
Options, 514 U.S. at 945, 115 S. Ct. 1920); see also San Juan Basin, 249
S.W.3d at 41B42 (reasoning that, although
reference to AAA rules might otherwise be construed as Aclear and unmistakable intent@ to refer arbitrability issues to
arbitrator,  language of agreement was
silent as to referral of Aarbitrability@ issues to arbitrator and limiting language
of agreement negated such intent); In re Ford Motor Co., 220 S.W.3d 21,
23 (Tex. App.CSan Antonio 2006, orig. proceeding)
(holding, despite reference to AAA rules, that agreement did not clearly and
unmistakably evidence intent that issue of whether a nonparty was bound by
arbitration agreement be decided by arbitrator).

Haddock
seeks to distinguish Marie on the basis that the conduct constituting
waiver arose in the same litigation in that case, as contrasted with the prior
litigation instituted by Haddock in a different court.[7]  We disagree. 
The conduct found to constitute waiver in Marie was in a separate
proceeding in a different litigation forum, the EEOC.  Marie, 402 F.3d. at 14.








Haddock
also argues that the First Circuit held that sending the waiver issue to the
arbitrator in Marie would be Aexceptionally inefficient@ given that the case started in court, whereas Haddock claims
this matter began with a demand for arbitration so that the issue of waiver
could more easily be resolved in that forum.  To the contrary, the conduct complained of by
Real Parties in Interest started when Haddock instituted and pursued his prior
litigation to an adverse decision in court. 
As the court in Marie recognized, A[i]f the arbitrator were to find that the defendant had
waived its right to arbitrat[ion], then the case would inevitably end up back
in court.@  Id. at 13. 
The same would be true here.

Finally,
Haddock argues that Marie did not address the incorporation of the AAA
rules into the arbitration agreement. 
But the court clearly considered that language, because it specifically
pointed out that the agreement so stated; yet the court found no clear and
unmistakable evidence of intent in the agreement to shift the issue of waiver
to the arbitrator.  Id. at 14.








Additionally,
as in the San Juan Basin and James & Jackson cases, the
arbitration agreement here is not unequivocal but contains limiting language
with regard to the incorporation of the AAA rules, incorporating those rules Ato the extent not inconsistent@ with the remainder of the detailed
provisions of the arbitration agreement, which contains five sections and ten
paragraphs of information prescribing the procedure and scope of any
arbitration.

We
also note that there is no designation in the arbitration agreement here as to
which version of the AAA  rules is to
apply, the version in existence when the agreement was made or that in
existence at the time of the dispute. 
Haddock acknowledges that the rule now designated as Rule 7(a), upon
which he relies, did not exist when the arbitration agreement was added to the
limited partnership agreement in 1994. 
Although, as Haddock points out, the partnership agreement has been
amended several times since its inception without change to the arbitration
agreement language, we cannot assume from silence in the agreement as to the
issue of arbitrability or as to which version of the AAA rules is to apply,
that the parties intended to incorporate Rule 7(a), which did not exist when
the arbitration agreement was added.  See
Marie, 402 F.3d at 15; see also Ehleiter, 482 F.3d at 222.








Silence
is not Aclear and unmistakable evidence@ of intent.  The agreement is silent as to whether the
parties intended to incorporate the current rules, silent as to whether the
arbitrator is to decide issues of Aarbitrability,@ and silent specifically regarding who is to decide waiver,
repudiation, or similar matters.  We hold
that the general reference in the arbitration agreement to the AAA rules,
without more, does not clearly and unmistakably manifest these parties= intent to refer the issue of waiver
by litigation conduct to the arbitrator.

b.               
Substantial
invocation of the litigation process still an issue for the court after Howsam

 

By
part of his second issue, Haddock argues that, even if this court concludes
that the trial court had power to consider some arbitrability issues, the trial
court lacked power specifically to decide the waiver issue, based upon language
contained in the United States Supreme Court=s decision in Howsam v. Dean Witter Reynolds Inc., which
stated that the Apresumption is that the arbitrator
should decide >allegation[s] of waiver, delay, or a
like defense to arbitrability.=@ 
537 U.S. at 84, 123 S. Ct. at 592 (quoting Moses H. Cone Mem=l Hosp., 460 U.S. at 24B25, 103 S. Ct. at 941).  In Perry Homes, the Culls made the
identical argument made here by Haddock, asserting that whether a party has
waived the right to arbitrate by litigation conduct is an issue to be decided
by the arbitrator, rather than the court, based upon the same language from Howsam.  258 S.W.3d at 588B90. 
The supreme court in Perry Homes rejected that argument, flatly
stating,

Every
federal court that has addressed this issue since Howsam has continued
to hold that substantial invocation of the litigation process is a question for
the court rather than the arbitratorCincluding the First, Third, Fifth, and Eighth Circuit.  Legal commentators appear to agree.  So do we.








Id. at 589; see JPD, Inc. v.
Chronimed Holdings, Inc., 539 F.3d 388, 393B94 (6th Cir. 2008) (holding Howsam limited to
contractually based waiver, not waiver by litigation conduct inconsistent with
arbitration); Ehleiter, 482 F.3d at 217; Marie, 402 F.3d at 13B14; Republic Ins. Co. v. PAICO
Receivables, LLC, 383 F.3d 341, 344B47 (5th Cir. 2004); Tristar Fin. Ins. Agency, Inc. v.
Equicredit Corp. of Am., 97 Fed. Appx. 462, 464 (5th Cir. 2004).  We overrule that portion of Haddock=s second issue.

c.                
The
ANo-Waiver@ Rule

Haddock
also argues that Rule 48-(a) of the AAA rules incorporated into the arbitration
agreement is a factor to be taken into consideration in determining whether he
waived the agreement.  That rule
provides, ANo judicial proceeding by a party
relating to the subject matter of the arbitration shall be deemed a waiver of a
party=s right to arbitrate.@ 
American Arbitration Association, Commercial Arbitration Rules and
Mediation Procedures, R48, http://www.adr.org/sp.asp?id=22440#R48 (last
accessed February 25, 2009).  Haddock
acknowledges that this rule does not preclude a finding of waiver but argues
that this rule, as incorporated into the agreement, is further indication of
the parties= intent to favor arbitration,
specifically with regard to waiver.








The
presence of such a Ano waiver@ clause in an arbitration agreement
does not alter the ordinary analysis undertaken to determine if a party has
waived its right to arbitration by litigation conduct.  PAICO, 383 F.3d at 348.  The Fifth Circuit in that case agreed with
those courts that have interpreted such a Ano waiver@ clause as intended to permit parties
to seek provisional remedies or other judicial proceedings that would not
function to displace arbitration on the underlying dispute.  Id. 
Specifically, the court in PAICO stated, A>[T]he fact that an arbitration
agreement incorporates such a provision would not prevent a court from finding
that a party waived arbitration by protracted litigation of an arbitrable
dispute.=@ 
Id. (quoting S & R Co. v. Latona Trucking, Inc., 159
F.3d 80, 85 (2nd Cir. 1998), cert. dism=d,
528 U.S. 1058 (1999)); see also Home Gas Corp. v. Walter=s of Hadley, Inc., 403 Mass. 772, 532 N.E.2d 681, 684B85 (1989) (holding Ano waiver@ clause did not prevent finding of
waiver by litigation conduct); Seidman & Seidman v. Wolfson, 50 Cal.
App. 3d 826, 835, 123 Cal. Rptr. 873 (Cal. Ct. App. 1975) (stating purpose
behind Ano 
waiver@ rule is not to allow a party to seek
judicial relief of a controversy Aand later to switch course and demand arbitration@).

We
hold that the trial court properly determined that it, rather than an arbitrator,
should decide whether Haddock waived the arbitration agreement by filing and
prosecuting the prior lawsuit. We overrule Haddock=s first issue.[8]








D.              
Waiver
by Prior Litigation Conduct Inconsistent with Arbitration

Having
dealt with the preliminary arguments 
that consumed the vast bulk of the briefing by both sides, we now
address the main issue.  Haddock contends
that the trial court abused its discretion and misapplied the law to the facts
by concluding that he waived arbitration by his conduct in initiating and
prosecuting the prior lawsuit.  Haddock
maintains that his prior lawsuit did not assert the same issues raised by his
demand for arbitration and that the issue in the prior lawsuit did not Aaris[e] out of or in connection with
th[e] [Partnership] Agreement or the Partnership@ but, instead, arose from an entirely separate contractCthe severance agreementCwhich was not subject to arbitration.








Real
Parties in Interest do not contest the validity of the arbitration agreement in
the limited partnership agreement.  Their
position is that the severance agreement is subject to the arbitration
agreement contained in the limited partnership agreement that Haddock raised
and litigated in the prior litigation, that his conduct in the prior litigation
was inconsistent with an intent to arbitrate that claim, and that they suffered
prejudice; thus, they argue, Haddock waived his right to arbitrate his current
claims.

Whether
a party has waived its arbitration rights under the FAA by inconsistent
litigation conduct is a question of law that we review de novo.  Perry Homes, 258 S.W.3d at 598 &
n.102; see also In re Citigroup Global Mkts, Inc., 258 S.W.3d 623, 625
(Tex. 2008) (orig. proceeding) (per curiam); In re Serv. Corp. Int=l, 85 S.W.3d 171, 174 (Tex. 2002) (orig. proceeding)
(per curiam).  Because public policy
favors arbitration, there is a strong presumption against waiver of
arbitration.  Moses H. Cone Mem=l Hosp., 460 U.S. at 24B25, 103 S. Ct. at 941;  In re D. Wilson Constr. Co., 196 S.W.3d at
783.








The
party asserting waiver bears a heavy burden of proof, and the court must
resolve all doubts in favor of arbitration. 
In re Bruce Terminix Co., 988 S.W.2d 702, 704 (Tex. 1998).  Waiver must be intentional.  In re Bank One, N.A., 216 S.W.3d at
827.  Waiver may be express or implied
from a party=s conduct, but that conduct must be
unequivocal.  Id.  Additionally, waiver in the context of
arbitration agreements subject to the FAA requires more than is required for
general waiverCit requires proof that the party
asserting waiver as a defense to arbitration has suffered prejudice.  Perry Homes, 258 S.W.3d at 594B95 & n.80 (reaffirming
requirement of prejudice and collecting cases).

Under
the FAA, A[a] party waives an arbitration
clause by substantially invoking the judicial process to the other party=s detriment.@ 
In re Citigroup Global Mkts., Inc., 258 S.W.3d at 625 (quoting Perry
Homes, 258 S.W.3d at 594).

To
demonstrate waiver, the party opposing arbitration must establish both that (1)
the party seeking arbitration substantially invoked the judicial process and
(2) the party opposing arbitration suffered prejudice thereby.  In re Bruce Terminix, 988 S.W.2d at
704.  To invoke the judicial process, a
party Amust, at the very least, engage in
some overt act in court that evinces a desire to resolve the arbitrable dispute
through litigation rather than arbitration.@  PAICO, 383 F.3d at 344 (quoting Subway
Equip. Leasing Corp. v. Forte, 169 F.3d 324, 326 (5th Cir. 1999)).

1.               
The
prior suit substantially invoked the judicial process








Haddock
contends that waiver could not have occurred because the prior suit concerned
only the unfavorable-comments clause in the severance agreement, which had no
arbitration agreement, and that his current arbitration demand asserts entirely
different claims that arise only out of a separate contract, i.e., the
partnership agreement.  Therefore, we
first determine whetherCas Real Parties in Interest contendCthe prior suit invoked the judicial
process regarding the same claims that Haddock now seeks to arbitrate.  See id. at 344B47 (holding waiver applies only where
the same claim sought to be arbitrated was previously litigated but upholding
finding of waiver where jurisdiction of court was previously invoked on all
issues).  We agree with Real Parties in
Interest on this key issue.








Although
the severance agreement contains no arbitration clause, the CREELP unit option
planCas amended and attached to the
severance agreementCdoes. 
Both the prior suit and the arbitration demand concern claims that Aaris[e] out of or in connection with@ the limited partnership or the
limited partnership agreement by virtue of the CREELP unit option plan, which
is subject to all terms of the limited partnership agreement.  Section 6.26 of the 1996 CREELP Unit Option
Incentive Plan, attached as an appendix to Haddock=s severance agreement, expressly provides
that Athe rights granted thereunder are
governed by and subject to each of the terms and conditions of the partnership
agreement.@ 
That option plan further provides that upon exercising an option
thereunder, each participant is Adeemed to have accepted and agreed to be bound by each of the
terms and conditions of the Partnership Agreement for all purposes.@ 
[Emphasis added.]  As amended in
1994 and thereafter, the partnership agreement, in turn, contains the
arbitration agreement under which Haddock seeks to arbitrate his CREELP unit
option and his CEI stock option claims.[9]








While
Haddock claims that he initially sought only to reform the unfavorable-comments
clause of the severance agreement in the prior lawsuit, he had a stated purpose
for doing soCso that he could plead and litigate
his claims of risky loans and mismanagement of the Crescent Entities, which
allegedly resulted in devaluing his CREELP and CEI options, without fear of
violating that clause.  Moreover, he also
sought and obtained affirmative injunctive relief against the Crescent
Entities, preventing them from threatening or taking action to forfeit his
rights in the CREELP unit options vested in him by the severance
agreement.  Haddock expressly stated his
intent to file an additional suit to assert his claims against the Crescent
Entities or, alternatively, to assert those claims in that same suit, and he
sought the protection of the court through a ruling that he would not risk
interference or forfeiture of his options by proceeding with his proposed
litigation.

Only
after ultimately suffering an adverse result in his suit did Haddock turn to
arbitration.  Haddock alleged in his
arbitration demand that the option claims he now asserts in that demand are Acovered by the arbitration provision
in the Limited Partnership Agreement.@[10] 
The fact is that both his prior suit and his arbitration demand assert
the same conduct of Real Parties in Interest, namely, allegedly refusing to
honor and reducing in value his CREELP unit options and CEI stock options.

Haddock
cannot have it both ways.  If, as he
says, his claims regarding option rights asserted in his arbitration demand are
covered by the arbitration agreement, then so were the claims regarding the
option rights that he sought to protect in the previous lawsuit and planned to
litigate once he obtained a declaration that the unfavorable-comments clause of
his severance agreement did not preclude such a suit.  By his prior lawsuit, Haddock invoked the
judicial process with respect to the same claims specifically regarding his
options in CREELP that he now seeks to arbitrate.








Was
his invocation of the judicial process in the prior litigation Asubstantial@? 
Waiver by litigation conduct must be decided under a
totality-of-the-circumstances test on a case-by-case basis.  Perry Homes, 258 S.W.3d at 591.  Factors listed in that case in considering
the totality of the circumstances include whether the party seeking arbitration
chose to file in court as plaintiff, how long the party seeking arbitration
delayed before seeking that process, whether that party knew of the arbitration
clause from the outset, how much discovery was conducted, how much pretrial
activity went to the merits, how much time and expense was incurred in
litigation, whether the party seeking arbitration filed dispositive motions or
sought judgment on the merits, and when the case was to be tried.  Id. at 591B92.

Real
Parties in Interest assert that Haddock Asubstantially@ invoked the judicial process with
respect to his claim regarding his rights in the CREELP unit options because

(1) Haddock chose to file the prior lawsuit in court
rather than arbitrate (Awhether the movant was the plaintiff (who chose to
file in court) or the defendant (who merely responded)@);

 

(2) Haddock filed the prior lawsuit in March 2005,
pursued it through final judgment, appealed it to this court, and waited until
July of 2006 to file his demand for arbitration (Ahow long the movant delayed before seeking arbitration@);

 








(3) Haddock was Athe primary signatory on the First Amended Limited
Partnership Agreement@ and Aintended for the arbitration agreement to be broad and
encompass all claims and disputes (Awhether the movant knew of the arbitration clause all
along@);

 

(4) Haddock knew of the arbitration agreement in 1994
when he signed the First Amended Limited Partnership Agreement (Awhen the
movant knew of the arbitration clause@);

 

(5) Haddock was the plaintiff in the prior lawsuit and
filed two motions for summary judgment (Awhether the movant filed affirmative claims and
dispositive motions@); and 

 

(6) Haddock pursued the prior lawsuit to a final
judgment (Awhether the movant sought judgment on the merits@). 

 

Haddock
does not dispute these facts.  Haddock
chose to file his prior suit rather than to arbitrate, sought and obtained
affirmative relief, and expressed his intent to pursue his claims in that
lawsuit or in another suit as to mismanagement and refusal of the Crescent
Entities to allow him to exercise his options. 
Throughout the prior litigation, Haddock never mentioned the arbitration
agreement under which he now seeks to arbitrate his option claims.  Yet he was clearly aware of it because he
admits in his brief in this court that he desired that it be included in the
limited partnership agreement in 1994.








Further,
waiver may be found where a party has tried and failed to achieve a
satisfactory result before turning to arbitration.  See, e.g., Oak Partners, 248
S.W.3d at 848; Loudermilk, 208 S.W.3d at 704; Williams Indus., Inc.
v. Earth Dev. Sys. Corp., 110 S.W.3d 131, 135 (Tex. App.CHouston [1st Dist.] 2003, no pet.);
In re Winter Park Constr. Inc., 30 S.W.3d 576, 579 (Tex. App.CTexarkana 2000, orig. proceeding);
compare In re Bruce Terminix Co., 988 S.W.2d at 704 (finding no waiver
where defendant did not ask court for any judicial decision such as by
requesting summary judgment).








Indeed,
failing to seek arbitration until after proceeding in litigation to an adverse
result is the clearest form of inconsistent litigation conduct and is
inevitably found to constitute substantial invocation of the litigation process
resulting in waiver.  See, e.g., Jones
v. Citibank (S.D.), N.A., 235 S.W.3d 333, 340B41 (Tex. App.CFort Worth 2007, no pet.) (holding
defendant waived arbitration of counterclaim by litigating over two years and
after summary judgment was rendered against her); see also Frye v. Paine,
Weber, Jackson & Curtis, Inc., 877 F.2d 396, 398 (5th Cir. 1989) (holding
party waived arbitration by participating in litigation that ended in
mistrial), cert. denied, 494 U.S. 1016 (1990); Miller Brewing Co. v.
Fort Worth Distrib. Co., 781 F.2d 494, 497B98 (5th Cir. 1986) (finding waiver by filing state court
lawsuit and permitting it to be dismissed for want of prosecution); see also
Carbajal v. Household Bank F.S.D., No. 00 C 0626, 2003 WL 22159473, at *10
(N.D. Ill. Sept. 18, 2003) (noting A[p]articipation in litigation raises concerns of
forum-shopping.  If a party first demands
arbitration only after it receives an adverse ruling in the lawsuit, courts
inevitably will find waiver@ and collecting cases), aff=d, 372 F.3d 903 (7th Cir. 2004); Oak Partners,
248 S.W.3d at 849 (holding trial court=s waiver finding based on totality of circumstances including
engaging in extensive discovery over nineteen-month period, filing of
counterclaim, cross-claims, and motion for partial summary judgment, and
seeking arbitration only after failure of mediation).

Haddock
filed his arbitration demand after filing suit, obtaining injunctive relief,
litigating for some nine months, filing two motions for summary judgment, and
finally suffering an adverse result in the prior lawsuit.  All of these facts support the trial court=s finding that he substantially
invoked the litigation process and thereby waived his right to arbitration.

Moreover,
participation in litigation to gain an advantage in future litigation can
result in waiver.  See In re Christus
Spohn Health Sys. Corp., 231 S.W.3d 475, 481 (Tex. App.CCorpus Christi 2007, orig.
proceeding) (holding hospital=s prior litigation conduct in
criminal case constituted waiver of right to arbitrate where prior litigation
involved developing evidence as part of strategic plan for defense of civil
suit for damages).  Haddock made clear in
his pleadings in his prior suit that his strategy and plan was to obtain an
interpretation of the severance agreement that would permit him to assert his
claims in a lawsuit without violating the unfavorable-comments clause while
preventing Real Parties in Interest from taking any action to interfere with
the option rights he sought to protect by injunctive relief and which he now
seeks to arbitrate.








Haddock
filed his arbitration demand for his option claims over a year and a half after
filing suit, prosecuting that suit, suffering an adverse summary judgment in
the trial court, and after dismissing his appeal to this court.  Considering the totality of the circumstances
as articulated in Perry Homes, we hold that Haddock substantially
invoked the judicial process.

2.               
Prejudice








Substantially
invoking the judicial process does not waive a party=s arbitration rights unless the
opposing party also proves that it suffered prejudice as a result.  Perry Homes, 258 S.W.3d at 593B94 (citing In re Bruce Terminix
Co., 988 S.W.2d at 704).  ACourts will not find that a party has
waived its right to enforce an arbitration clause by merely taking part in
litigation unless it has substantially invoked the judicial process to its
opponent=s detriment.@ 
In re Service Corp. Int=l,
85 S.W.3d at 174.  AWhen one party reveals a
disinclination to resort to arbitration on any phase of suit involving all parties,
those parties are prejudiced by being forced to bear the expense of a trial. .
. .  Substantially invoking the
litigation machinery qualifies as the kind of prejudice that is the essence of
waiver.@ 
E.C. Ernst, Inc. v. Manhattan Constr. Co., 559 F.2d 268, 269 (5th
Cir. 1977) (holding extensive postsuit actions in all phases of complex
litigation served as waiver of right to arbitrate when opposing parties were
prejudiced by being forced to bear expenses of a quite lengthy trial, which is
the kind of prejudice arbitration is designed to avoid).

APrejudice@ has many meanings.  Perry Homes, 258 S.W.3d at 597.  However, prejudice or Adetriment@ in the context of litigation conduct
inconsistent with arbitration relates to Ainherent unfairness@ caused by Aa party=s attempt to have it both ways by switching between
litigation and arbitration to its own advantage.@  Id.; see
also Subway, 169 F.3d at 327 (referring to Ainherent unfairnessCin terms of delay, expense, or damage to a party=s legal positionCthat occurs when the party=s opponent forces it to litigate an
issue and later seeks to arbitrate that same issue@). 
A[A] party should not be allowed
purposefully and unjustifiably to manipulate the exercise of its arbitral
rights simply to gain an unfair tactical advantage over the opposing party.@ 
Id. (citing In re Tyco Int=l Ltd. Securities Litigation, 422 F.3d 41, 46 n.5 (1st Cir.
2005)).








Ultimately,
what constitutes waiver of the right to arbitrate depends on the facts of each
case.  PAICO, 383 F.3d at 346
(citing Tenneco Resins, Inc. v. Davy Int=l, AG, 770 F.2d 416, 420 (5th Cir
1985)).  Three factors are particularly
relevant in determining prejudice.  Id.  First, pretrial activity related to all
claims including those that are arbitrable may result in prejudice.  Id. 
(citing Price v. Drexel Burnham Lambert, Inc. 791 F.2d 1156, 1161B62 (5th Cir. 1986)).  Second, time and expense incurred in
defending against a motion for summary judgment could prejudice the party
opposing arbitration.  Price, 791
F.2d at 1162.  Thus, both delay and the
extent of the moving party=s participation in judicial
proceedings are material factors in assessing prejudice. Frye, 877 F.2d
at 398.  Third, failure to assert the
right to demand arbitration is a factor bearing on the question of prejudice
along with other considerations.  Price,
791 F.2d at 1161B62. 
A demand for arbitration puts the other party on notice that arbitration
is forthcoming and affords that party the opportunity to avoid compromising its
position with regard to arbitrable and nonarbitrable claims.  PAICO, 383 F.3d at 347.








If
a party has asserted the right to arbitrate at or before commencement of
litigation, the party opposing arbitration will necessarily carry a heavy
burden to show waiver.  Id.  Conversely, when a party fails to demand
arbitration and also engages in pretrial activity inconsistent with the intent
to arbitrate, the opposing party seeking to show waiver Amay more easily show that its
position has been compromised, i.e., prejudiced.@  Id.; see
Oak Partners, 248 S.W.3d at 851 (concluding that plaintiff showed prejudice
when defendant delayed nineteen months before moving to compel arbitration,
during which time it actively pursued litigation in the trial court, sought
discovery from plaintiff, and actively sought relief from the trial court,
which forced plaintiff to respond and to incur attorney=s fees); Jones, 235 S.W.3d at
340B41 (holding appellant waived her right
to arbitrate when she waited for over two years after card issuer=s first petition was filed before
requesting arbitration, and by that time had filed numerous motions including a
motion to dismiss, a counterclaim, and opposition to summary judgment); see
also Fraser v. Merrill Lynch Pierce, Fenner & Smith, Inc., 817 F.2d
250, 253 (4th Cir. 1987) (finding sufficient prejudice to support waiver where
brokerage firm delayed four-and-one-half years before seeking arbitration, two
trial dates passed, and opposing party was required to respond to two motions
for partial summary judgment and three motions to dismiss); Miller Brewing,
781 F.2d at 497C98 (finding waiver where plaintiff
unconditionally filed suit, waited eight months to assert right to arbitrate,
and did not pursue arbitration until after its suit was dismissed three years
later for want of prosecution). 
Likewise, in Price, the Fifth Circuit Court of Appeals held that
prejudice resulted in waiver when the party opposing arbitration had been put
to the expense and time of defending a motion to dismiss and for summary
judgment because unlike a perfunctory motion to dismiss before answering, a
federal rule 12(b) motion to dismiss and for summary judgment Acould not have caused anything but
substantial prejudice to the Prices.@  791 F.2d at 1162.








Haddock
failed to seek arbitration before initiating the prior litigation.  Then he waited over fourteen months before
requesting arbitration, from March 2005, when he filed the prior lawsuit, until
July 2006, when he filed his statement of claims with the AAA.  During that time, among other things, he
obtained a temporary injunction, filed two motions for summary judgment,
litigated his claims to an adverse judgment, and filed and dismissed an appeal
from that judgment.  The trial court
specifically found that the ACrescent Entities were prejudiced by
Haddock=s invocation of the judicial system
in the Prior Lawsuit.  In reliance on
Haddock=s actions, the Crescent Entities
spent substantial sums defending Haddock=s claims in the Prior Lawsuit and prosecuting a counterclaim.@ 
Haddock has not challenged that finding.

We
hold that the trial court did not abuse its discretion by staying the
arbitration because Haddock made his choice: he substantially invoked the
judicial process as to his option claims to the prejudice of Real Parties in
Interest in the prior litigation and thereby waived his right to arbitrate those
claims.  We overrule Haddock=s third issue.

IV.            
Conclusion








Haddock
does not challenge the trial court=s ruling that his claims based on his stock options in CEI or
his Sarbanes-Oxley claim are beyond the scope of the arbitration agreement. Nor
has he raised an issue on appeal as to the trial court=s ruling that his claims against
Quinn, Rowsey, and Worrell are beyond the scope of the arbitration
agreement.  Therefore, we need not reach
the propriety of the trial court=s order as to those claims. 
Having overruled Haddock=s three issues, we deny the petition
for writ of mandamus, and we dismiss the interlocutory appeal for want of
jurisdiction.

 

 

ANNE GARDNER

JUSTICE

 

PANEL:  GARDNER
and WALKER, JJ.; and DIXON W. HOLMAN, J. (Senior Justice, Retired, Sitting by
Assignment).

 

WALKER, J. concurs without opinion.

 

DELIVERED: 
February 26, 2009











[1]Each of several amended
partnership agreements contain the identical arbitration provision.





[2]When an abuse of
discretion standard of review applies to a trial court=s ruling, findings of fact
and conclusions of law aid us in reviewing the propriety of the ruling by
providing us with an explanation for the ruling.  Chrysler Corp. v. Blackmon, 841 S.W.2d
844, 852 (Tex. 1992); Samuelson v. United Healthcare of Tex., Inc., 79
S.W.3d 706, 710 (Tex. App.CFort Worth 2002, no pet.).  But while findings of fact and conclusions of
law can be helpful in applying the abuse of discretion standard, they are not
required.  Samuelson, 79 S.W.3d at
710.  To determine whether a trial court
abused its discretion, we must decide whether it acted without reference to any
guiding rules or principles; in other words, whether the act was arbitrary or
unreasonable.  See Downer v.
Aquamarine Operators, Inc., 701 S.W.2d 238, 241B42 (Tex. 1985), cert.
denied, 476 U.S. 1159 (1986).  Any
factual issues decided by the court in reaching the decision under review are
not reviewed by legal‑ and factual‑sufficiency standards, although
when the decision under review is based on facts determined by the court, those
facts must have some support in the evidence. 
Crouch v. Tenneco, Inc., 853 S.W.2d 643, 649 & n.2 (Tex. App.CWaco 1993, writ denied)
(op. on reh=g).  However, neither party has challenged the
trial court=s findings of fact in
this case.





[3]The facts in this case
are undisputed.  Relator=s position is that the
trial court misapplied the law to the facts and abused its discretion.  See In re Dillard Dep=t Stores, Inc., 198 S.W.3d 778, 780
(Tex. 2006).





[4]Indeed, Haddock has
argued from the outset that Arepudiation@ and Awaiver@ in the context of a party=s litigation conduct that
is inconsistent with arbitration have no substantive difference.





[5]Although the trial court
did not make an explicit finding or conclusion as to whether it possessed the
power to determine the issue of waiver, it implicitly so concluded because it
proceeded to determine the essential elements of waiver against Haddock.





[6]The limited partnership
agreement requires that Delaware law be used when construing the agreement,
specifically including the arbitration agreement.  The parties agree that, to the extent that
any state substantive law applies, Delaware law Amirrors federal law.@  When applying the FAA, Texas courts also look
to federal law to decide substantive issues. 
Jack B. Anglin Co., 842 S.W.2d at 271B72.  We thus look to federal law to determine this
issue.





[7]Haddock does not discuss
the differences between or attempt to distinguish Ehleiter or James
& Jackson from this case.





[8]We also overrule the
second part of Haddock=s second issue, in which
he argues that whether the arbitration agreement forbids his Sarbanes-Oxley
derivative claim is for the arbitrator to decide, not the court, similar to a
like issue regarding class arbitration under Green Tree Financial Corp. v.
Bazzle, 539 U.S. 444, 449, 123 S. Ct. 2402, 2405 (2003) (holding question
of whether an arbitration agreement forbade class arbitration was for the
arbitrator, not the court, because it involved contract interpretation and
arbitration procedures).  The trial court
did not determine that the derivative claim was forbidden by the arbitration
agreement; rather, it determined that the claim was outside the scope of the
arbitration agreement because most CEI stockholders were not parties to the
partnership agreement. Haddock has not challenged that ruling or the findings
of the court to that effect.





[9]The trial court found,
and Haddock has not challenged that finding, that he raised some of the same
issues in the prior suit that he now seeks to arbitrate, alleging in his
petition in that suit that the Crescent Entities Amay be acting adversely
to the interests of stockholders and unitholders@ and that AHaddock further believes
the management of the Employer Group is not acting in the best interests of the
shareholders and unitholders by providing risky loans to executives which
seriously jeopardize the financial health and stability of the Employer Group.@

 





[10]Although Haddock points
out that he had and retains to this day a limited partnership interest in
CREELP, he has never explained how the arbitration demand involves that limited
partnership interest, other than through the identical options that were
involved in the prior suit.