Carolyn JONES, Appellant

v.

CITIBANK (SOUTH DAKOTA), N.A., Appellee.

No. 2–06–440–CV.

Court of Appeals of Texas, Fort Worth.

Aug. 31, 2007.

Carolyn Jones, Lake Dallas, appellant pro se.

Hirsch & Westheimer, P.C., Michael D. Conner, Eric Lipper, Houston, for appellee.

PANEL F: LIVINGSTON, HOLMAN, and GARDNER, JJ.

## OPINION

TERRIE LIVINGSTON, Justice.

### I. Introduction

Pro se appellant Carolyn Jones appeals from the trial court's order granting summary judgment in favor of appellee Citibank (South Dakota), N.A. Because we

conclude that appellee negated appellant's claims as a matter of law, we affirm the trial court's judgment.

## II. Background Facts

Appellant opened a credit card account with appellee in December 1998. For over six years, appellant used the card to purchase and finance merchandise, food, clothing, tickets to sporting events, a trip to Hawaii, and other items. Appellant also paid portions of the outstanding balance on the account during most of that time. In spring 2004, however, appellant's payments were less than the minimum required by appellee, and in May 2004, she stopped repaying the debt altogether. Appellee sued appellant in October 2004 to recover the remaining portion of the unpaid account balance, $8,914.15. With its original petition, appellee included requests for disclosures and admissions. Appellant timely responded to this first set of requests and filed an answer asserting several affirmative defenses and a counterclaim.

On June 10, 2005, appellee served appellant with a second set of requests for admissions. Appellant's responses to the requests were due thirty days later, but according to appellee, appellant did not mail the responses until July 25, 2005; thus, they were deemed admitted. TEX.R. CIV. P. 198.2.[1] In response, appellee filed a traditional summary judgment motion regarding its contract claim against appellee and a no-evidence summary judgment motion regarding appellant's affirmative defenses and counterclaim. Appellant responded to the motions but did not move

to withdraw her deemed admissions. Consequently, the trial court granted all of appellee's summary judgment motions.[2] Appellant appeals only the traditional summary judgment ruling regarding the contract dispute.

## III. Standard of Review

In a summary judgment case, the issue on appeal is whether the movant met the summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex.2002); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979). The burden of proof is on the movant, and all doubts about the existence of a genuine issue of material fact are resolved against the movant. *Sw. Elec. Power Co.*, 73 S.W.3d at 215.

▪ When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex.2005). Evidence that favors the movant's position will not be considered unless it is uncontroverted. *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex.1965).

The summary judgment will be affirmed only if the record establishes that the movant has conclusively proved all essential elements of the movant's cause of action or

---

1. After reviewing the record, we cannot determine the exact date that appellant mailed her responses to the requests or whether the trial court considered the admissions as summary judgment evidence. However, appellant concedes that she did not answer the second

request for admissions in a timely manner and that those admissions were deemed admitted.

2. The trial court did not state its reasons for granting the summary judgment motions.

defense as a matter of law. *Clear Creek Basin,* 589 S.W.2d at 678.

## IV. Existence of a Contract

In her first and fourth issues, appellant complains that the trial court abused its discretion by granting summary judgment based solely on her deemed admissions because no contract between appellant and appellee ever existed in the first place.[3] Appellee served appellant with two sets of requests for admissions. Appellant answered the first set but did not timely answer the second set; the second set of admissions *negated any attempt by appellant to deny the existence of a contract.* See TEX.R. CIV. P. 198.3; *Marshall v. Vise,* 767 S.W.2d 699, 700 (Tex.1989) (holding that unanswered requests for admissions are automatically deemed admitted unless court on motion permits withdrawal or amendment; once admitted, admission is judicial admission, whether deemed or otherwise).

Appellant's deemed admissions show that no genuine issue of material fact existed regarding whether appellant entered into a written agreement with appellee, had a credit card account with appellee, used the card to purchase items, or failed to pay her bill.[4] *See Marshall,* 767 S.W.2d at 700. Further, appellee's motion for summary judgment was not based exclusively on deemed admissions. Its motion was supported by, among other evidence, an affidavit of Terri Ryning, a custodian of records for appellee. The Ryning affidavit essentially (1) authenticated the credit card agreement documents and monthly statements and (2) stated the account balance that was due and unpaid. The evidentiary foundation for Ryning's personal knowledge was provided by her statements that (1) she was a Vice President of Citicorp Credit Services, Inc. (USA), a "servicer" for appellee, (2) she was a custodian of appellee's records, and (3) her duties included having custody and control of records related to appellant's account. *See, e.g., Radio Station KSCS v. Jennings,* 750 S.W.2d 760, 761–62 (Tex.1988) (providing that affidavits submitted in support of motions for summary judgment shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence,

---

3. Appellee sued appellant for breach of contract and, alternatively, unjust enrichment.

4. We recognize the Texas Supreme Court's holding in *Wheeler v. Green,* which reversed a summary judgment that was based on deemed admissions that a pro se plaintiff had failed to timely answer. 157 S.W.3d 439, 442–44 (Tex.2005). However, *Wheeler* is distinguishable. In *Wheeler,* the pro se litigant, who was fighting to keep joint managing conservatorship of her daughter, was unaware of the "mailbox rule" and missed her deadline for filing answers to the father's requests for admissions by two days even though she attempted to meet the deadline. *Id.* at 441. Consequently, the trial court granted summary judgment in favor of the father and terminated Wheeler's joint managing conservatorship. *Id.* The Texas Supreme Court reversed the decision, holding that trial courts have broad discretion to permit or deny withdrawal of deemed admissions, but cannot do

so arbitrarily, unreasonably, or without reference to guiding rules or principles. *Id.* at 443. Further, courts should allow deemed admissions to be withdrawn if a party can show (1) good cause and (2) no undue prejudice. *Id.* at 442. Here, appellant *conceded* that she did not respond to the admissions, and there is nothing in the record to indicate that she asked to *withdraw* or amend them, so *Wheeler* is inapplicable. *See id.*

In any event, while a lack of understanding of pretrial procedure by a pro se litigant might be proof of good cause to withdraw deemed admissions, a conscious indifference is not. *Id.* at 443. Here, unlike the pro se litigant in *Wheeler,* appellant complied with the discovery rules by responding timely to the first request for admissions, but she showed no good cause for failing to even attempt to respond on time to the second request for admissions. *See id.*

and shall show affirmatively that the affiant is competent to testify to the matters stated therein). Ryning also authenticated appellee's business records including 101 pages of monthly account statements beginning with a $0.00 balance on December 22, 1998, and ending on June 22, 2004, with an unpaid balance of $8,914.15. The Ryning affidavit also identified the account card *agreement,* which contained the terms and conditions for appellant's use of the account. Ryning noted that the "total amount due on the Account is $8,914.15," that the card agreement provided for appellant to pay "interest . . . attorney's fees and court costs," and that, despite demand for payment, the amount due "ha[d] not been paid by" appellant.

■ Appellant concedes that the card account was hers and does not challenge the admissibility of the card agreement, but instead argues that she had no contract with appellee because the agreement was "unsigned, unilateral, [and] disputed." It is unclear from the record whether the trial court considered federal law, Texas law, or South Dakota law when making its determination on appellee's motion for summary judgment. Appellant argues that South Dakota and federal law control.[5] Regardless, the result is the same under each of the three jurisdictions.

■ Under federal law, the term "credit" means the right granted by a creditor to a debtor to defer payment of debt or to incur debt and defer its payment. 15 U.S.C.A. § 1602(e) (West 1998). Thus, a credit card company extends credit to an individual when it opens or renews an account, as well as when the cardholder actually uses the credit card to make purchases. *Am. Exp. Co. v. Koerner,* 452 U.S. 233, 241, 101 S.Ct. 2281, 2286, 68 L.Ed.2d

803 (1981). When the account is opened, the creditor has granted a right "to incur debt and defer its payment," and when the account is used, the creditor has allowed the cardholder "to defer payment of debt." *Id.; Riethman v. Berry,* 287 F.3d 274, 279 (3rd Cir.2002) (construing "creditor" to mean someone who enters into an *agreement* with another party who uses credit to incur debt). The issuance of a credit card constitutes a credit offer, and the use of the card constitutes acceptance of the offer. *Bank of Am. v. Jarczyk,* 268 B.R. 17, 22 (W.D.N.Y.2001). Thus, a contract was formed here under federal law.

■ Under Texas law, if one party signs a contract, the other may accept by her acts, conduct, or acquiescence to the terms of the contract, making it a binding agreement on both parties. *See MG Bldg. Materials, Ltd. v. Moses Lopez Custom Homes, Inc.,* 179 S.W.3d 51, 61–62 (Tex. App.-San Antonio 2005, pet. denied); *Hearthshire Braeswood Plaza Ltd. P'ship v. Bill Kelly Co.,* 849 S.W.2d 380, 392 (Tex.App.-Houston [14th Dist.] 1993, writ denied); *see also Benser v. Citibank (South Dakota, N.A.),* No. 08–99–00242–CV, 2000 WL 1231386, at *5 (Tex.App.-El Paso Aug. 31, 2000, no pet.) (not designated for publication) (concluding that appellant's use of credit card and payments to account showed he understood obligation to bank and that contract had been formed). Appellant does not dispute the validity of the six years of account statements or that the card agreement was signed by Ken Stork, the President and CEO of Citibank. Further, appellant does not dispute that she used her Citibank credit card to purchase goods for over six years. Thus, even if appellant never

---

5. Appellant's first and fourth issues do not address her jurisdictional argument. Instead, her second and third issues do. We analyze

the applicable law here, however, to determine whether the contract between appellant and appellee was valid.

signed the card agreement, under Texas law, she entered into a contract with appellee by accepting the benefits of their arrangement. *See MG Bldg. Materials, Ltd.,* 179 S.W.3d at 62; *Benser,* 2000 WL 1231386, at *5.

Further, a contract existed under South Dakota law. Appellee is a national bank located in South Dakota and organized under the National Bank Act. *See Smiley v. Citibank (South Dakota), N.A.,* 517 U.S. 735, 744, 116 S.Ct. 1730, 1735, 135 L.Ed.2d 25 (1996). Although neither party motioned the trial court to take judicial notice of the laws of South Dakota, appellant noted in her pleadings that the card agreement contained the language that it "shall be governed by federal law and the law of South Dakota, where [appellee is] located." Under South Dakota law,

> [t]he use of an accepted credit card or the issuance of a credit card agreement and the expiration of thirty days from the date of issuance without written notice from a card holder to cancel the account creates a binding contract between the card holder and the card issuer with reference to any accepted credit card, and any charges made with the authorization of the primary card holder.

S.D. Codified Laws § 54–11–9 (1983). Again, appellant does not dispute that she obtained and used the credit card account, and she presented no evidence that she did not use the account or that she cancelled the account within thirty days of issuance. Thus, by using the credit card that appellee issued to her, appellant entered into a binding contract with appellee under South Dakota law. *Id.*

Because appellant failed to dispute appellee's evidence that she entered into a credit card agreement with appellee, that the account was hers, or that she used the account, and because appellant failed to

provide evidence contradicting the validity of the card agreement under Texas, South Dakota, or federal law, the trial court did not err by granting summary judgment in favor of appellee. Tex.R. Civ. P. 166a(c); *Sw. Elec. Power Co.,* 73 S.W.3d at 215. Accordingly, we overrule appellant's first and fourth issues.

**V. Appellant's Arbitration Issues**

■■■ In her second and third issues, appellant argues that even if a contract existed, appellee violated that contract by failing to submit the dispute to arbitration. A party seeking to compel arbitration must first prove that an arbitration agreement exists and that the claims asserted fall within the scope of the agreement. *In re Oakwood Mobile Homes, Inc.,* 987 S.W.2d 571, 573 (Tex.1999) (orig. proceeding), *abrogated in part on other grounds by In re Halliburton Co.,* 80 S.W.3d 566 (Tex.2002) (orig. proceeding), *cert. denied,* 537 U.S. 1112, 123 S.Ct. 901, 154 L.Ed.2d 785 (2003); *Grand Homes 96, L.P. v. Loudermilk,* 208 S.W.3d 696, 701 (Tex. App.-Fort Worth 2006, pet. filed). Any doubts regarding the existence or scope of an agreement are resolved in favor of arbitration. *In re FirstMerit Bank, N.A.,* 52 S.W.3d 749, 753 (Tex.2001).

The arbitration clause in the card agreement between appellant and appellee provided that "any dispute *may be* resolved by binding arbitration." [Emphasis added.] Further, the agreement provides that "[a]rbitration replaces the right to go to court," and either party "may, without the other's consent, elect mandatory, binding arbitration for any claim, dispute, or controversy." This type of language is construed broadly. *In re Conseco Fin. Serv. Corp.,* 19 S.W.3d 562, 568 (Tex.App.-Waco 2000, orig. proceeding). It encompasses all claims at issue unless "it can be said with positive assurance that an arbitration

clause is not susceptible of an interpretation which would cover the dispute at issue." *Prudential Sec. Inc. v. Marshall,* 909 S.W.2d 896, 899 (Tex.1995) (orig. proceeding) (quoting *Neal v. Hardee's Food Sys., Inc.,* 918 F.2d 34, 37 (5th Cir.1990)).

Appellee had a claim against appellant for an unpaid credit card account balance, and appellant disputed that claim. Therefore, both parties' claims fall within the scope of the arbitration clause. *See Pepe Int'l Dev. Co. v. Garcia,* 915 S.W.2d 925, 931 (Tex.App.-Houston [1st Dist.] 1996, orig. proceeding). Appellee asserts that appellant waived her right to arbitrate by failing to assert this right before summary judgment was rendered. We agree.

 Whether a party has waived its right to arbitrate presents a question of law that we review de novo. *Oakwood Mobile Homes, Inc.,* 987 S.W.2d at 574; *Loudermilk,* 208 S.W.3d at 703. Because public policy favors arbitration, there is a strong presumption against finding that a party has waived its right to arbitration; the burden to prove waiver is thus a heavy one. *In re Bruce Terminix Co.,* 988 S.W.2d 702, 704–05 (Tex.1998) (orig. proceeding); *EZ Pawn Corp. v. Mancias,* 934 S.W.2d 87, 89 (Tex.1996) (orig. proceeding); *Loudermilk,* 208 S.W.3d at 703. Any doubts regarding waiver are resolved in favor of arbitration. *Bruce Terminix Co.,* 988 S.W.2d at 705; *Loudermilk,* 208 S.W.3d at 703.

 Waiver may be express or implied, but it must be intentional. *EZ Pawn Corp.,* 934 S.W.2d at 89; *Loudermilk,* 208 S.W.3d at 703. Whether waiver occurs depends on the individual facts and circumstances of each case. *Loudermilk,* 208 S.W.3d at 703; *Williams Indus., Inc. v. Earth Dev. Sys. Corp.,* 110 S.W.3d 131, 135 (Tex.App.-Houston [1st Dist.] 2003, no pet.). A party does not waive arbitration merely by delay; instead, the party urging

waiver must establish that any delay resulted in prejudice. *Prudential Sec. Inc.,* 909 S.W.2d at 898; *Loudermilk,* 208 S.W.3d at 703. A court may find waiver only when (1) the party seeking arbitration has substantially invoked the judicial process and (2) the party opposing arbitration suffers actual prejudice as a result. *Bruce Terminix Co.,* 988 S.W.2d at 704; *Loudermilk,* 208 S.W.3d at 704.

 Courts will not find that a party has waived its right to enforce an arbitration clause by merely taking part in litigation unless it has substantially invoked the judicial process to its opponent's detriment. *Bruce Terminix Co.,* 988 S.W.2d at 704; *Loudermilk,* 208 S.W.3d at 704. Substantially invoking the judicial process may occur when the party seeking arbitration actively tried, but failed, to achieve a satisfactory result in litigation before turning to arbitration. *Loudermilk,* 208 S.W.3d at 704; *Williams Indus., Inc.,* 110 S.W.3d at 135.

 Here, appellant not only waited over two years after appellee's first petition was filed to request arbitration, she filed numerous motions to dismiss, a counterclaim, and oppositions to summary judgment in the two years of litigation. Only after the trial court rendered summary judgment against her did she assert her right to arbitration. By the time appellant finally requested arbitration of the dispute, appellee and appellee's counsel had already prepared and filed several of their own motions and responded to appellant's motions to dismiss and counterclaim, and appellee had received a favorable ruling from the trial court on its motion for summary judgment. *See Marble Slab Creamery, Inc. v. Wesic, Inc.,* 823 S.W.2d 436, 439 (Tex.App.-Houston [14th Dist.] 1992, no writ) (holding that appellate court may presume trial court took judicial no-

tice of its own record and that trial court record in that case supported prejudice element). Under these circumstances, we hold that appellant substantially invoked the litigation process to appellee's detriment and, thus, waived her right to arbitrate the counterclaim. *See Frye v. Paine, Webber, Jackson & Curtis, Inc.*, 877 F.2d 396, 398 (5th Cir.1989) (holding that party waived arbitration by participating in trial that ended in mistrial), *cert. denied*, 494 U.S. 1016, 110 S.Ct. 1318, 108 L.Ed.2d 493 (1990); *Miller Brewing Co. v. Fort Worth Distrib. Co.*, 781 F.2d 494, 497–98 (5th Cir.1986) (holding that party waived arbitration by filing multiple lawsuits);[6] *see also In re Serv. Corp. Int'l*, 85 S.W.3d 171, 175 (Tex.2002) (orig. proceeding) ("The Fifth Circuit has held that 'a party only invokes the judicial process to the extent it litigates a specific claim it subsequently seeks to arbitrate.'"). Because appellant waived her right to arbitrate the contract dispute, the trial court did not abuse its discretion by declining to order that the dispute be arbitrated. We overrule appellant's second and third issues.

## VI. Conclusion

Having overruled appellant's four issues, we affirm the trial court's summary judgment in favor of appellee.

---

**6.** The standard for determining waiver of the right to arbitrate is the same under the Texas General Arbitration Act and the Federal Arbitration Act. *Southwind Group, Inc. v. Land-wehr*, 188 S.W.3d 730, 735 (Tex.App.-Eastland 2006, no pet.); *Brown v. Anderson*, 102 S.W.3d 245, 250 (Tex.App.-Beaumont 2003, pet. denied).