TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-09-00438-CV






Tressie A. Damron, Appellant


v.


Citibank (South Dakota) N.A., Appellee






FROM COUNTY COURT AT LAW NO. 1 OF TRAVIS COUNTY

NO. C-1-CV-08-005823, HONORABLE ERIC SHEPPERD, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N


 In a suit to recover a credit-card debt, appellee Citibank (South Dakota), N.A.
(Citibank) obtained a final summary judgment awarding it $5,478.98 on an account-stated claim
against the debtor, appellant Tressie A. Damron. Damron appeals, contending that the trial court
erred (1) in failing to exclude Citibank's summary-judgment affidavit; (2) in granting
summary judgment on Citibank's account-stated claim; and (3) in granting summary judgment on
a counterclaim asserted by Damron that was not addressed in Citibank's summary-judgment motion.
We will affirm the trial court's judgment as to Citibank's account-stated claim, but reverse and
remand as to Damron's counterclaim.


BACKGROUND

 It is undisputed that Citibank issued a credit card to Damron in 2003 and that
Damron incurred charges on the account. In 2008, alleging that Damron had defaulted in making
required monthly payments, Citibank sued Damron, asserting causes of action for breach of contract,
account stated, and debt. Citibank sought recovery of the outstanding balance owed by Damron,
which it alleged to be $5,478.98, plus interest, costs, and attorney's fees. Citibank then moved for
a traditional summary judgment based only on its account-stated claim. In support of its motion,
Citibank relied upon the affidavit of Ramona Aragon, who testified that she is a "litigation analyst"
with Citicorp Credit Services, Inc., a Citibank affiliate that provides debt-collection services for
Citibank and other affiliated companies. (1) Attached to Aragon's affidavit were what purported to be
reproductions of Damron's monthly account statements reflecting activity beginning when the
account was opened in March 2003 and concluding with what Aragon termed a "final account
statement" or "final billing statement" in February 2008. Aragon identified the attachments as
accurate reproductions of Damron's monthly account statements from Citibank's computer records
and proved them up as Citibank business records. Aragon further testified to a number of facts
related to Damron's account, including that Damron had failed or refused to repay the amounts
shown as due and owing on the monthly account statements. Aragon testified that according to
information contained in Citibank's account records, Damron owed Citibank $5,478.98. The same
balance was shown as due and owing in the "final account statement" attached to Aragon's affidavit.

 Damron filed and served a response to Citibank's motion. In it, Damron objected to
Aragon's affidavit on the grounds of hearsay and "evident lack of personal knowledge." Also, in
an attempt to raise a fact issue, Damron submitted an affidavit from James S. Damron, her counsel
of record in this proceeding. (2) Mr. Damron averred that:


 I received and opened all correspondence that came to defendant from
plaintiff concerning the transactions that are the subject matter of this suit. No
final statement of account for transactions involved in this suit, including the one that
plaintiff alleges was sent, was ever received by me or defendant.


 I made all the payments that were made on the alleged debt, and the payments
that were made, when properly credited, were sufficient to pay all amounts lawfully
owed.



In reply, Citibank objected to James Damron's affidavit as the unsupported statement of an interested
witness and as "conclusory." 

 An oral hearing on Citibank's summary-judgment motion was scheduled for April 16,
2009, at 2:00 p.m. At 1:54 p.m. on that day, Damron filed a counterclaim in which she alleged that
Citibank "has engaged in unconscionable and deceptive business practices in its dealings with
defendant that have resulted in charges being made to defendant that were not owed . . . . [and]
payments by defendant of money not owed," and sought actual and punitive damages. Also, at
1:56 p.m., Damron filed a motion to supplement her response to Citibank's summary-judgment
motion with an objection to "any testimony in plaintiff's affidavit concerning the existence or
contents of any cardmember agreement or other document not made a part of the affidavit." At the
hearing, the trial court granted Damron's request to supplement her response. However, the record
does not reflect either that Damron explicitly requested leave to file her counterclaim or that the
trial court explicitly granted such leave.

 The trial court granted Citibank's motion and signed a final judgment awarding
Citibank $5,478.98 on its claims against Damron. The court further ordered that Damron take
nothing on her claims against Citibank. This appeal followed.


ANALYSIS

 In three issues on appeal, Damron argues that the trial court abused its discretion in
failing to exclude Aragon's affidavit and attachments, erred in granting summary judgment on
Citibank's account-stated claim, and erred in granting summary judgment on Damron's counterclaim
because Citibank's motion did not address it. 


Standard of review 

 We review the trial court's summary judgment de novo. Valence Operating Co.
v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005); Provident Life & Accident Ins. Co. v. Knott,
128 S.W.3d 211, 215 (Tex. 2003). Summary judgment is proper when there are no disputed issues
of material fact and the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c);
Knott, 128 S.W.3d at 215-16. In deciding whether there is a disputed material fact issue precluding
summary judgment, we take as true proof favorable to the non-movant, and we indulge every
reasonable inference and resolve any doubt in favor of the non-movant. Randall's Food Mkts., Inc.
v. Johnson, 891 S.W.2d 640, 644 (Tex. 1995).

 As a movant seeking summary judgment on its account-stated cause of action,
Citibank had the initial burden of establishing its entitlement to judgment as a matter of law by
conclusively establishing each element of that cause of action. See M.D. Anderson Hosp. & Tumor
Inst. v. Willrich, 28 S.W.3d 22, 23 (Tex. 2000) (per curiam) (citing Rhône-Poulenc, Inc. v. Steel,
997 S.W.2d 217, 222-23 (Tex. 1999); Oram v. General Am. Oil Co., 513 S.W.2d 533, 534
(Tex. 1974) (per curiam)). Assuming Citibank met this burden, the burden shifted to Damron to file
a timely written response presenting grounds for denying summary judgment. See City of Houston
v. Clear Creek Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979). Grounds that Damron did not
expressly present to the trial court by written response cannot be considered as grounds for reversal
on appeal. Tex. R. Civ. P. 166a(c); Clear Creek Basin Auth., 589 S.W.2d at 678. Citibank's motion
must stand on its own merits, however, and thus Damron is not precluded from contending
on appeal that the grounds presented in Citibank's motion were legally insufficient to entitle it
to summary judgment. Rhône-Poulenc, 997 S.W.2d at 223 (citing Clear Creek Basin Auth.,
589 S.W.2d at 678). Additionally, Citibank bears the burden on appeal of showing that there is no
genuine issue of material fact and that it is entitled to judgment as a matter of law. See id.

 We review the trial court's rulings concerning the admission or exclusion
of summary-judgment evidence for an abuse of discretion. See, e.g., Fairfield Fin. Group, Inc.
v. Synnott, 200 S.W.3d 316, 319 (Tex. App.--Austin 2009, no pet.) (admission of summary-judgment evidence); Cruikshank v. Consumer Direct Mortgage, Inc., 138 S.W.3d 497, 499
(Tex. App.--Houston [14th Dist.] 2004, pet. denied) (exclusion of summary-judgment evidence).
An abuse of discretion exists only when the court's decision is made without reference to any
guiding rules and principles or is arbitrary or unreasonable. Downer v. Aquamarine Operators, Inc.,
701 S.W.2d 238, 241-42 (Tex. 1985). We must uphold the district court's evidentiary ruling if
there is any legitimate basis for it. See Owens-Corning Fiberglas Corp. v. Malone, 972 S.W.2d 35,
43 (Tex. 1998). Moreover, we will not reverse a judgment based on a claimed error in admitting
or excluding evidence unless the complaining party shows that the error probably resulted in
an improper judgment. Tex. R. App. P. 44.1; Malone, 972 S.W.2d at 43; City of Brownsville
v. Alvarado, 897 S.W.2d 750, 753 (Tex. 1995). A successful challenge to a trial court's evidentiary
rulings requires the complaining party to demonstrate that the judgment turns on the particular
evidence excluded or admitted. Texas Dep't of Transp. v. Able, 35 S.W.3d 608, 617 (Tex. 2000).


Aragon affidavit

 In her first issue, Damron contends that the trial court abused its discretion in failing
to exclude the Aragon affidavit and attachments. Specifically, Damron urges that Aragon failed
to demonstrate her personal knowledge underlying her testimony proving up the attached
account statements as Citibank business records. This is ultimately a complaint that the trial court
abused its discretion in failing to exclude the account statements as hearsay. To preserve this
complaint for appellate review, Damron was required to obtain a ruling on her objection. See, e.g.,
McFarland v. Citibank (S.D.), N.A., 293 S.W.3d 759, 762 (Tex. App.--Waco 2009, no pet.); Dulong
v. Citibank (S.D.), N.A., 261 S.W.3d 890, 893 (Tex. App.--Dallas 2009, no pet.). Damron does not
cite, nor have we found, any ruling by the trial court overruling her objection. Consequently, she
failed to preserve the objection for appellate review. Tex. R. App. P. 33.1(a)(2).

 Alternatively, to the extent Damron's complaint goes to the competence of Aragon's
testimony and could be raised for the first time on appeal, see Kerlin v. Arias, 274 S.W.3d 666,
668 (Tex. 2008) (per curiam); Sprayberry v. Siesta MHC Income Partners, L.P., No. 03-08-00649-CV, 2010 WL 1404598, at *2-4 (Tex. App.--Austin Apr. 8, 2010, no pet.) (mem. op.), we conclude
that it is without merit. The gravamen of Damron's complaint is that there is some reason to doubt
whether Aragon's testimony regarding Citibank's record-keeping procedures was based on her
personal knowledge because she is employed by a Citibank affiliate rather than Citibank itself and
is an "interested witness" who helps Citibank collect its debts. Damron further suggests that various
statements by Aragon regarding Damron's account history "are highly suspect as coming from
personal knowledge" and cast doubt on her claims to personal knowledge of Citibank record-keeping
procedures. To the contrary, Aragon adequately demonstrates her competence to give the testimony
she provided.

 Aragon testified that in her role as litigation analyst, she is required to
have knowledge regarding Citibank's policies and procedures and that she has acquired
personal knowledge regarding how account records are made and kept by Citibank. She added that
she has access to Citibank account records and is "required to be familiar with facts regarding
account holders who are involved in active litigation with [Citibank]." In that role, Aragon
explained, she acquired access to and knowledge regarding Damron's account records. Aragon
then identified the attachments as true and correct copies of Damron's account statements and
proved them up as Citibank business records. She went on to offer observations and conclusions
based on the account records and her knowledge of Citibank's record-keeping procedures, including
summarizing Damron's account activity, Citibank's imposition of interest and charges, Damron's
default, and the amount Damron ultimately owed. 

 Contrary to what Damron suggests, the rules of evidence do not require that
the qualified witness who lays the predicate for the admission of business records be their creator
or have personal knowledge of the contents of the record; the witness is required only to
have personal knowledge of the manner in which the records were kept. See Tex. R. Evid. 803(6),
902(10); see also Bridges v. Citibank (S.D.) N.A., No. 02-06-00081-CV, 2006 WL 3751404, at *2
(Tex. App.--Fort Worth Dec. 21, 2006, no pet.) (mem. op.) (citing In re K.C.P., 142 S.W.3d.
574, 578 (Tex. App.--Texarkana 2004, no pet.)). We conclude that Aragon's testimony adequately
demonstrated the basis for her personal knowledge of the manner in which Citibank kept
its records and the other facts to which she testified. Other Texas courts have considered similar
affidavit testimony by other Citibank "servicer" personnel as adequate to establish the basis
for the affiants' personal knowledge and competence. See, e.g., McFarland, 293 S.W.3d at 762
(affidavit "not conclusory" because based on "personal knowledge derived from her
work as a Litigation Analyst"; provided proper basis for admitting business records); Wynne
v. Citibank (S.D.) N.A., No. 07-06-000162-CV, 2008 WL 1848286, at *2 (Tex. App.--Amarillo
Apr. 25, 2008, pet. denied) (mem. op.); Jones v. Citibank (S.D.), N.A., 235 S.W.3d 333,
337 (Tex. App.--Fort Worth 2007, no pet.); Hay v. Citibank (S.D.) N.A., No. 14-04-01131-CV,
2006 WL 2620089, at *3 (Tex. App.--Houston [14th Dist.] Sept. 14, 2006, no pet.) (mem. op.). We
overrule Damron's first issue.



Citibank's account-stated claim 

 In her second issue, Damron argues that the trial court erred in granting
summary judgment on Citibank's account-stated claim. The elements of the common-law cause
of action for account stated are: (1) transactions between the parties give rise to indebtedness of
one to the other; (2) an agreement, express or implied, between the parties fixes an amount due;
and (3) the one to be charged makes a promise, express or implied, to pay the indebtedness. Busch
v. Hudson & Keyse, LLC, 312 S.W.3d 294, 299 (Tex. App.--Houston [14th Dist.] 2010, no pet.);
Dulong, 261 S.W.3d at 893. Because the requisite agreement can be express or implied, the plaintiff
need not adduce evidence of a written cardmember contract, but can instead present evidence of acts
and conduct by the parties that give rise to an implied agreement fixing an amount due and that
the defendant agreed to pay the indebtedness. See Busch, 312 S.W.3d at 299; Dulong, 261 S.W.3d
at 894. Such acts and conduct may include the cardholder's use of the card to make purchases,
the cardholder's making of payments on the account, and the cardholder's acquiescence in the
card issuer's imposition of interest, fees, and charges. See Busch, 312 S.W.3d at 299-300; Dulong,
261 S.W.3d at 894. 

 Aragon's affidavit and the attached monthly statements reflected that Citibank
issued Damron a credit card in March 2003. Thereafter, Citibank mailed, to the same address for
Damron each time, monthly statements showing extensions of credit, the applicable interest rate
or rates, interest charges and any fees imposed, and the amount of any payments by Damron. 
Damron maintained a zero balance until September 25, 2003, when she made a balance transfer of
$4,499.00--$1.00 below her $4,500 credit limit. Thereafter, on May 11 and 12, 2005, Damron
made two purchases. Interest was charged on these extensions of credit at varying rates and over-limit and late fees were periodically assessed. In response to the monthly statements, Damron
made payments on the account, generally the minimum monthly payment specified on the statement. 
Damron twice made larger payments that would have almost satisfied the account balance, but
both times her payment was returned for insufficient funds. There was no indication in the
account records that Damron ever objected to or disputed any charges or fees Citibank imposed prior
to Citibank's filing suit. Damron ceased making payments after July 30, 2007. Citibank continued
to send monthly statements to her until February 2008. At that point, Aragon testified and the
statements reflected, Damron owed Citibank $5,478.98. This evidence meets Citibank's summary-judgment burden to establish a series of transactions between Citibank and Damron, as well as acts
and conduct establishing that Citibank and Damron had an implied agreement fixing an amount due
equal to the cash advance she received and the purchases she made, less payments and credits to her
account, plus interest and fees, and that Damron impliedly promised to pay Citibank the amount due. 
See, e.g., McFarland, 293 S.W.3d at 763; Dulong, 261 S.W.3d at 894.

 Damron argues that Citibank was not entitled to summary judgment on its account-stated claim because Citibank "judicially admitted" there was an express cardmember agreement
governing the parties' transactions. However, as previously noted, Citibank was not required to
prove the agreement's existence solely through evidence of the express cardmember agreement, but
could rely instead on evidence of the parties' acts and conduct that established an agreement by
implication. See Busch, 312 S.W.3d at 299; Dulong, 261 S.W.3d at 894. Damron also argues that
Citibank could not recover on an account-stated claim because the transactions sued upon did not
involve the transfer of title to goods or services from Citibank to Damron. However, an account-stated claim does not require proof that the sued-upon transactions involved the transfer of title to
goods or services between the parties. See Dulong, 261 S.W.3d at 893 & n.3. Damron seems to
confuse the elements of the common-law cause of action for account stated with the requirements
for a suit on an account under Texas Rule of Civil Procedure 185. See id. Citibank has asserted an
account-stated cause of action independent of rule 185.

 Damron also insists that the affidavit of James S. Damron raises a fact issue that
precludes summary judgment. Specifically, Damron relies on the statement that, "No final statement
of account for transactions involved in this suit, including the one that plaintiff alleges was sent,
was ever received by me or defendant." Damron evidently assumes that the existence of the requisite
implied agreement and promise to pay rests solely upon proof of her acquiescence to Citibank's
final account statement after receiving it. However, Citibank's summary-judgment evidence also
included proof--which remains uncontroverted--that Damron received all prior monthly statements,
that the statements reflected her outstanding account balance and the interest rate or rates being
charged, that Damron never objected to or disputed any charges, and that the final amount due and
owing was $5,478.98. This uncontroverted evidence establishes Citibank's entitlement to judgment
as a matter of law on its account-stated claim. See, e.g., McFarland, 293 S.W.3d at 763; Dulong,
261 S.W.3d at 894. We overrule Damron's second issue. 


Damron's counterclaim

 In her third issue, Damron asserts that the trial court erred in granting
summary judgment as to her literally last-minute counterclaim because Citibank's summary-judgment motion failed to address it. See McConnell v. Southside Indep. Sch. Dist., 858 S.W.2d 337,
341 (Tex. 1993) ("A [summary-judgment] motion must stand or fall on the grounds expressly
presented in the motion."). In response, Citibank argues only that the counterclaim was not before
the trial court, insisting that the record belies the court's having impliedly granted leave for Damron
to file her counterclaim late and considered it. See Goswami v. Metropolitan Savings & Loan Ass'n,
751 S.W.2d 487, 490 (Tex. 1988) (holding that if record offers no basis to conclude that late
pleading was not considered by the trial court and opposing party does not show surprise or
prejudice, leave of court to file late pleading is presumed). We disagree with Citibank. The
final judgment reflects that the trial court considered the counterclaim, as it explicitly rendered
judgment that Damron take nothing on her claims. Because Citibank's motion did not address the
counterclaim, summary judgment on it was error. See Smith v. Heard, 980 S.W.2d 693, 697-98
(Tex. App.--San Antonio 1998, pet. denied). (3) We sustain Damron's third issue.


CONCLUSION

 Having overruled Damron's issues challenging summary judgment as to
Citibank's account-stated claim, we affirm that portion of the trial court's judgment. However,
because the judgment indicates or we must presume that the trial court considered Damron's
counterclaim when granting summary judgment, and this claim was not addressed in Citibank's
summary-judgment motion, we must reverse this portion of the trial court's judgment and remand for
further proceedings.



 __________________________________________

 Bob Pemberton, Justice

Before Chief Justice Jones, Justices Puryear and Pemberton

Affirmed in part; Reversed and Remanded in part

Filed: August 25, 2010
1. Aragon explained that both Citibank and Citicorp Credit Services, Inc. are subsidiaries of
Citigroup, Inc.
2. The record does not indicate whether Damron and her counsel, who shares her surname,
are related. 
3. As the issue has not been raised, we express no opinion regarding the viability of Damron's
counterclaim in the face of our judgment affirming summary judgment on Citibank's account-stated
claim.