

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-21-00154-CV

———————————————

MARIA SOCORRO ESTRADA, INDIVIDUALLY AND ON BEHALF OF THE
ESTATE OF CESAR ESTRADA RANGEL, AND AS NEXT OF FRIEND TO C.E.
JR., Y.E., AND N.E., MINORS; JULIANA MEZA ON BEHALF OF THE ESTATE
OF LEO MARIN AND AS NEXT FRIEND TO E.I.M., A MINOR; AMANDA M.
ESTRADA AS NEXT FRIEND TO J.O.H.P., A MINOR; AND DAMIAN
MICHAEL ESTRADA, Appellants

V.

12291 CBW, LLC D/B/A TEMPTATIONS CABARET, INC.; RCI
HOSPITALITY HOLDINGS, INC.; AND RCI HOLDINGS, INC., Appellees

On Appeal from the 141st District Court
Tarrant County, Texas
Trial Court No. 141-314482-20

Before Birdwell, Bassel, and Wallach, JJ.
Memorandum Opinion by Justice Bassel

# MEMORANDUM OPINION

## I. Introduction

In this interlocutory appeal, Appellants complain of the trial court's denial of their motion to compel arbitration of their wrongful-death and survival claims against Appellees. In a single issue, Appellants raise the question of whether "a party without possession of the arbitration agreement and without knowledge of the chosen arbitration provider [can] waive arbitration by litigation conduct that occurs before this information is provided." Because we conclude that Appellants knew that an arbitration agreement existed for thirteen months prior to filing their motion to compel arbitration and because Appellants substantially invoked the judicial process during that time, which resulted in prejudice to Appellees, we hold that the trial court did not abuse its discretion by denying Appellants' motion to compel arbitration. Accordingly, we affirm.

## II. Background[1]

On or about March 8, 2018, Leo Marin and Cesar Estrada Rangel (the decedents) were shot to death while employed at Temptations Cabaret. In January 2020, Maria Socorro Estrada filed suit asserting wrongful-death and survival claims

---

[1]Because we dispose of the appeal on the issue of waiver-by-litigation conduct, we necessarily set forth the various actions taken in the trial court and the dates on which they occurred.

against Appellees[2] and others who are not part of this appeal. The original petition concluded with discovery requests.

On February 24, 2020, RCI Holdings, Inc. and RCI Hospitality Holdings, Inc. each filed verified denials, special exceptions, and an original answer.[3] Both RCI Holdings and RCI Hospitality specially excepted to Maria Socorro Estrada's original petition because it did not comply with Texas Rule of Civil Procedure 47(c)'s requirement to specify the maximum amount of monetary relief to which she claimed she was entitled.[4] RCI Holdings and RCI Hospitality pleaded the affirmative defenses of limitations and of the existence of an arbitration agreement, among others. 12291 CBW, LLC d/b/a Temptations Cabaret, Inc. (CBW) later filed its own verified denials, special exceptions, and original answer and pleaded the affirmative defenses of limitations and the existence of an arbitration agreement, among others.

On March 5, 2020, a first amended petition was filed to add plaintiff Juliana Meza on behalf of the Estate of Leo Marin and as next friend of E.I.M., a minor; to add plaintiff Amanda M. Estrada, as next friend to J.O.H.P., a minor; to add plaintiff

---

[2]Appellants alleged that "RCI is the flagship holding company, which owns the Temptations brand."

[3]RCI Holdings and RCI Hospitality stated that they "did not own or operate Temptations [Cabaret], did not employ [the decedents], and otherwise have no relevant connection to this case."

[4]RCI Holdings and RCI Hospitality warned Maria Socorro Estrada of the consequences of the failure to comply with Rule 47(c), specifically quoting the rule's language: "A party that fails to comply with (c) may not conduct discovery until the party's pleading is amended to comply." *See* Tex. R. Civ. P. 47.

Damian Michael Estrada; and to add Queen Shiva, LLC as a defendant.[5] Appellants' first amended petition did not correct the Rule 47(c) deficiency. Despite failing to correct the Rule 47(c) deficiency, the first amended petition, like the original petition, included discovery requests.[6]

On December 10, 2020—ten months after the filing of the answers referencing an arbitration agreement—the trial court held a hearing during which the arbitration agreement was discussed. The trial court asked why Appellees' counsel could not send the arbitration agreement to Appellants' counsel, and Appellees' counsel responded that he would be happy to participate in discovery once Appellants had cured their Rule 47 deficiency.[7] The following exchange about the arbitration agreement then occurred:

> [APPELLANTS' TRIAL COUNSEL]: And I would ask the [c]ourt just to tell [Appellees' trial] counsel to drop that in an email to me.
>
> THE COURT: Drop what in an email to you?

---

[5]Seven months later, Appellants nonsuited their claims against Queen Shiva, LLC.

[6]The following day, Gloria Marin, individually and as next friend of Julian Leonardo Marin, filed suit in the 352nd District Court of Tarrant County against JAI Dining Services El Paso, Inc.; RCI Hospitality Holdings, Inc.; Rick's Cabaret International, Inc. d/b/a Temptations Cabaret. Gloria's suit, which involved some of the same parties and similar claims, was dismissed for want of prosecution in January 2021.

[7]Appellees' counsel also mentioned a "probate deficiency," but because that is not relevant to our disposition of the appeal, we do not detail any probate deficiencies.

4

[APPELLANTS' TRIAL COUNSEL]: The arbitration agreement.

THE COURT: Well, I don't think I have a motion in front of me to compel the arbitration agreement. I can ask him to. Why don't you send him the arbitration agreement, which I think I did already.

Appellants did not correct the Rule 47(c) deficiency until December 16, 2020, when they filed their second amended petition and requested monetary relief in excess of $1,000,000.[8] *See* Tex. R. Civ. P. 47(c)(4). Thereafter, in January 2021, Appellees produced the arbitration agreement that each of the decedents had signed.[9]

---

[8]Additionally, the second amended petition corrected the name of "Temptations Cabaret, Inc." to "12291 CBW, LLC d/b/a "Temptations Cabaret, Inc." and removed Queen Shiva, LLC from the style and from the list of defendants.

[9]Each of the decedents had signed an arbitration agreement that contained the following:

> By their signatures below, the parties hereto agree that any and all controversies, disputes, or claims between the parties, including, but not limited to, any and all controversies, disputes, or claims arising out of or related in any way to Employee's employment at 12291 CBW, LLC d/b/a Temptations [Cabaret] (the "Club"), or in connection with any future relationship of any kind between the parties, whether contractual, in tort, or based upon statute, shall be exclusively decided by binding arbitration held pursuant to the Federal Arbitration Act ("FAA"). Said binding arbitration shall occur in Tarrant County, Texas[,] and be administered by a neutral arbitrator appointed by Conflict Solutions of Texas, and the arbitrator shall be permitted to award any relief available in a court of law. To the fullest extent permitted by law, the arbitrator shall apply the commercial arbitration rules of Conflict Solutions of Texas as amended from time to time, except to the extent that such rules conflict with the provisions of this Agreement in which event the provisions of this Agreement shall control.

> . . . .

In February 2021, the parties filed a joint motion for continuance of the trial setting, requesting that it be removed from the week of April 19, 2021, and reset to the week of February 28, 2022. In early March 2021, the trial court signed an agreed docket control order setting the trial for February 28, 2022.

On March 19, 2021, Appellants filed their motion to abate and compel arbitration. Thereafter, RCI Hospitality and RCI Holdings filed a motion for summary judgment seeking to have Appellants' claims "dismiss[ed] on summary judgment with prejudice" because CBW "*solely* owned, operated[,] and controlled Temptations [Cabaret] for all times relevant to this lawsuit through the present" and because "[*r*]*espondeat superior*, agency, and control-of-a-contractor theories fail because the RCI Defendants have never employed, hired, or controlled any employees, agents, or contractors working at Temptations [Cabaret]." Appellees collectively filed another motion for summary judgment based on limitations. Appellees also filed a response in opposition to Appellants' motion to abate and compel arbitration, setting forth a variety of reasons to support their opposition (e.g., Appellants had substantially invoked the judicial process, and Appellees had been prejudiced by Appellants' substantial invocation of the judicial process). Appellants filed a reply arguing that they had not waived arbitration because "[t]he arbitration agreement was

> Any and all controversies, claims[,] or disputes between the parties (and any other persons or entities associated with the Club, including but not limited to RCI Management Services, Inc., and/or the foregoing entities' parents, subsidiaries[,] and/or affiliates) shall be arbitrated individually[.] [Footnotes omitted.]

6

not produced until January 2021" and because Appellees had not been prejudiced by discovery since "they chose not to actually participate in discovery."

On April 29, 2021, the trial court held a hearing on Appellants' motion to abate and compel arbitration. Appellees' trial counsel gave a variety of reasons why the trial court should deny the motion, including that litigation had been ongoing for "a year and a half," that Appellants had engaged in discovery, that Appellees had responded to the discovery, and that there had been "multiple motions heard in two different courts." The trial court concluded the hearing without ruling, but later that day, the trial court signed an order denying the motion. Appellants requested findings of fact and conclusions of law, but none were filed.

## III. Discussion

In their sole issue, Appellants contend that "a party without possession of the arbitration agreement and without knowledge of the chosen arbitration provider [cannot] waive arbitration by litigation conduct that occurs before this information is provided." We disagree with Appellants' contention based on the facts presented here. Because Appellants had notice of the arbitration agreement the month after they filed suit and because they continued litigating and propounding discovery for thirteen months before filing a motion to compel arbitration, we conclude that the

7

trial court did not abuse its discretion by denying Appellants' motion to compel based on their waiver-by-litgation conduct.[10]

## A.      Standard of Review[11]

We review a trial court's order denying a motion to compel arbitration for an abuse of discretion. *Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018); *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 642–43 (Tex. 2009) (orig. proceeding). We defer to the trial court's factual determinations if they are supported by evidence but review its legal determinations de novo. *Henry*, 551 S.W.3d at 115.

The record must be construed in a light favorable to supporting the trial court's ruling. *See Keller v. Nevel*, 699 S.W.2d 211, 212 (Tex. 1985). When, as here, findings of fact and conclusions of law are not filed,[12] it is implied that the trial court made all necessary findings of fact to support its ruling. *See Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 83 (Tex. 1992). Because the trial court did not state a basis for its

---

[10]Appellants' brief also includes an argument regarding Appellees' limitations defense. Because we resolve the appeal based on waiver-by-litigation conduct, which forms the crux of Appellants' sole issue on appeal, we need not address the limitations argument. *See* Tex. R. App. P. 47.1.

[11]We borrow heavily from portions of the standard-of-review, applicable-law, and application sections found in this court's recent opinion in *Leland Pennington, Inc. v. Bulls*, No. 02-20-00282-CV, 2021 WL 832690, at *2, *5, *6, *8 (Tex. App.—Fort Worth Mar. 4, 2021, no pet.) (mem. op.). Having set forth that citation here and desiring to avoid lengthy string cites, we use direct cites in the body of the opinion to the cases cited in *Leland Pennington*.

[12]In appeals from interlocutory orders, the trial court need not file findings of fact and conclusions of law but may do so within thirty days after the order is signed. Tex. R. App. P. 28.1(c).

ruling in the order denying the motion to compel arbitration, we must uphold the trial court's ruling on any legal theory supported by the evidence. *See Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990); *Grand Homes 96, L.P. v. Loudermilk*, 208 S.W.3d 696, 702 (Tex. App.—Fort Worth 2006, pet. denied).

**B.     Applicable Law**

The Texas Supreme Court has set forth the law on implied waiver as a defense to arbitration:

> A party asserting implied waiver as a defense to arbitration has the burden to prove that (1) the other party has "substantially invoked the judicial process," which is conduct inconsistent with a claimed right to compel arbitration, and (2) the inconsistent conduct has caused it to suffer detriment or prejudice.

*G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 511–12 (Tex. 2015) (first citing *Perry Homes v. Cull*, 258 S.W.3d 580, 589–90 (Tex. 2008), and then citing *Kennedy Hodges, L.L.P. v. Gobellan*, 433 S.W.3d 542, 545 (Tex. 2014)). Whether a party has substantially invoked the judicial process depends on the totality of the circumstances. *Id.* at 512 (citing *Perry Homes*, 258 S.W.3d at 589–90). Courts consider a "wide variety" of factors, including

- how long the party moving to compel arbitration waited to do so;

- the reasons for the movant's delay;

- whether and when the movant knew of the arbitration agreement during the period of delay;

- how much discovery the movant conducted before moving to compel arbitration, and whether that discovery related to the merits;

9

• whether the movant requested the court to dispose of claims on the merits;

• whether the movant asserted affirmative claims for relief in court;

• the extent of the movant's engagement in pretrial matters related to the merits (as opposed to matters related to arbitrability or jurisdiction);

• the amount of time and expense the parties have committed to the litigation;

• whether the discovery conducted would be unavailable or useful in arbitration;

• whether activity in court would be duplicated in arbitration; [and]

• when the case was to be tried.

*Id.* (citing *Perry Homes*, 258 S.W.3d at 590–91). The question of whether a party has waived its right to arbitration through its litigation conduct is a question of arbitrability for the courts to decide. *Id.* at 520 (citing *Perry Homes*, 258 S.W.3d at 588).

Further, the substantial invocation of the litigation process must also have prejudiced the opposing party. *Kennedy Hodges*, 433 S.W.3d at 545 (citing *Perry Homes*, 258 S.W.3d at 593). In this context, prejudice is "inherent unfairness in terms of delay, expense, or damage to a party's legal position that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue." *Id.* (citing *Perry Homes*, 258 S.W.3d at 597). While proof of prejudice is required to support a claim that a party waived arbitration, "proof establishing the precise extent of that prejudice is not." *Hogg v. Lynch, Chappell & Alsup, P.C.*, 480 S.W.3d 767, 793 (Tex. App.—El Paso 2015, no pet.) (quoting *Perry Homes*, 258 S.W.3d at 599–600).

10

Detriment or prejudice refers to an "inherent unfairness caused by a 'party's attempt to have it both ways by switching between litigation and arbitration to its own advantage.'" *In re Citigrp. Glob. Mkts., Inc.*, 258 S.W.3d 623, 625 (Tex. 2008) (orig. proceeding) (quoting *Perry Homes*, 258 S.W.3d at 597).

### C. Application of the Law to the Facts

#### 1. Substantially Invoked the Judicial Process

Here, we need not decide whether Appellants had constructive notice or constructive knowledge of the decedents' arbitration agreements at the time Appellants filed suit because the pleadings demonstrate that the month after Maria Socorro Estrada filed suit, RCI Holdings and RCI Hospitality answered and pleaded the affirmative defense of the existence of an arbitration agreement. Appellants, however, waited thirteen months from when they learned of the arbitration agreement before they filed their motion to compel arbitration.

According to Appellants, the reason for the delay is that they did not learn until the December 10, 2020 hearing that there was an arbitration agreement that each decedent had signed because it was on that date that "[A]ppellees reluctantly admitted there was an arbitration agreement." But Appellants were on notice as of February 2020—when RCI Holdings and RCI Hospitality alleged their affirmative defense— that an arbitration agreement existed but did not file a motion to compel arbitration

11

until March 2021.[13]  *See generally* Tex. R. Civ. P. 94; *LSREF2 Cobalt (TX), LLC v. 410 Centre LLC*, 501 S.W.3d 626, 634 (Tex. App.—San Antonio 2016, pet. denied) ("'The purpose of requiring the pleading of affirmative defenses is to put the other party on notice of the matters to be relied on and to enable him to ascertain what proof he may need to meet such defenses.'" (quoting *Royal Typewriter Co. v. Vestal*, 572 S.W.2d 377, 378 (Tex. App.—Houston [14th Dist.] 1978, no writ)).  Nor did Appellants nonsuit their claims against Appellees.

Instead, after receiving RCI Holdings's and RCI Hospitality's answers, which included the affirmative defenses regarding the existence of an arbitration agreement,

---

[13]In a brief mention in their issue presented and later in a single sentence, Appellants argue that they did not know the identity of the arbitration provider until January 2021 when the arbitration agreements were produced.  To the extent that Appellants rely on this as a reason for their delay in moving to compel arbitration, they do not cite any authority to support the proposition that their delay was warranted based on the failure to obtain the arbitration provider's identity.  We therefore hold that this argument is inadequately briefed.  *See* Tex. R. App. P. 38.1(i).

Alternatively, we note that Appellants' delay in obtaining the arbitration agreement, and thus the arbitration provider's identity, was due to Appellants' own failure to comply with Rule 47(c).  Other than setting forth the dialog between the trial court and Appellees' counsel, Appellants make only three brief references to Rule 47; yet, those references never explain why Appellants failed to take the simple step of specifying the amount of monetary relief they were seeking.  Instead, Appellants argue that they were relieved of complying with Rule 47 because "the agreement replaced the Texas Rule of Civil Procedure 47 with an express limitation of discovery to 'Level 1 rules of discovery found at Texas Rule of Civil Procedure [190.2] as they exist[ed] on August 1, 2014.'"  Appellants thus seek to use the arbitration agreement's language to excuse their failure to follow the litigation rules while pursuing litigation for thirteen months before filing a motion to compel arbitration under the arbitration agreement.  Appellants cannot have it both ways.  Accordingly, Appellants' argument attempting to justify their delay on this basis fails.

12

Appellants filed a first amended petition that added additional parties and propounded discovery. Appellees' response in opposition to Appellants' motion to compel states that in total, Appellants served RCI Holdings and RCI Hospitality with 1 request for disclosure, 3 sets of requests for production, 2 sets of interrogatories, and 2 sets of requests for admission; and Appellants served CBW with 1 request for disclosure, 2 sets of requests for production, 1 set of interrogatories, and 1 set of requests for admission. Appellees' response further states that "but for a single [r]equest for [p]roduction, all of [Appellants'] discovery requests went to the merits of the dispute." Additionally, with regard to the *Perry Homes* factor pertaining to whether the discovery conducted would be unavailable or useful in arbitration, Appellees pointed out in their response in opposition to the motion to compel that Appellants had violated the terms of the arbitration agreement—which required discovery to be limited by the Level 1 rules of discovery in Texas Rule of Civil Procedure 190.2 as they existed on August 1, 2014—by conducting discovery beyond the time period allowed and by serving more discovery than would be allowed under the applicable expedited discovery plan. And although Appellants claim on appeal that "[n]o substantive discovery was produced until . . . after the motion to compel arbitration was denied," the record contains the following:

- CBW's objections and answers to interrogatories, objections and responses to requests for production, responses to requests for disclosure, and objections and responses to requests for admission—all

13

of which were forwarded to all known counsel of record on June 19, 2020;

- RCI Holdings's objections and answers to interrogatories, objections and responses to requests for production, responses to requests for disclosure, and objections and responses to requests for admission—all of which were forwarded to all known counsel of record on March 20, 2020; and

- RCI Hospitality's objections and answers to interrogatories, objections and responses to requests for production, responses to requests for disclosure, and objections and responses to requests for admission—all of which were forwarded to all known counsel of record on March 20, 2020.

With regard to the extent of Appellants' engagement in pretrial matters, Appellees point to the following events: Appellants amended their petition twice; opposed previous pleas in abatement and argued in favor of continuing to pursue their claims in court; nonsuited Queen Shiva, LLC; agreed to a continuance of a trial setting and amended a scheduling order after two previous trial settings; and moved to

continue the hearing on Appellees' two motions for summary judgment. As a result of the continuances of the trial setting, the trial is not set until February 28, 2022.[14]

Considering the totality of the circumstances, we hold that Appellants substantially invoked the litigation process in contravention to any rights they may have had to arbitration. *See Leland Pennington*, 2021 WL 832690, at \*7; *Jones v. Citibank (S.D.), N.A.*, 235 S.W.3d 333, 340–41 (Tex. App.—Fort Worth 2007, no pet.).

### 2. Inconsistent Conduct Caused Prejudice

With regard to the prejudice prong of the waiver-by-litigation-conduct analysis, Appellees point out that they have been prejudiced because "Appellants sought to extract an unfair advantage by using the judicial process as a loophole to sidestep the [a]rbitration [a]greement's expedited discovery control plan, being able to assess multiple judicial venues before deciding which one may be most advantageous, and avoiding pending motions for summary judgment." In their response to the motion to compel arbitration, Appellees do not provide exact figures for the delay, expenses, or damages that they have sustained as a result of Appellants' substantial invocation of the judicial process, but Appellees were not required to do so under *Perry Homes*. *See* 258 S.W.3d at 599 ("[T]he Defendants had to show substantial invocation that

---

[14]Appellants argue that "[o]nly one of the *Perry Homes* events (agreeing to a trial reset) occurred after . . . December 10, 2020." As explained above, the February 2020 filing of RCI Holdings's and RCI Hospitality's answers (which included the affirmative defense of the existence of an arbitration agreement), not the December 10, 2020 hearing, is the date that triggered the time line for calculating Appellants' delay in moving for arbitration.

prejudiced them, not precisely how much it all was."); *Leland Pennington*, 2021 WL 832690, at *8 (stating "proof establishing the precise extent of that prejudice is not [required]" (citations omitted)). Appellees do, however, explain how they have suffered prejudice:

> [T]he amount of time and delay caused by [Appellants] before pursuing arbitration is significant. Simply put, this case has been going well over a year[,] and [Appellants] only just now are indicating a desire to arbitrate. The amount of expense has also been significant. [RCI] Hospitality and [RCI] Holdings filed their original answers in February 2020, and they have been litigating this case ever since, incurring substantial expenses conducting investigations, discovery, and motion practice.

The record reflects that CBW filed its answer in May 2020 and responded to discovery requests in June 2020, thus participating for 10 months in the proceedings in the trial court. Appellees detail in their brief that much of the discovery conducted by Appellants would be unavailable in arbitration as Appellants have served Appellees with interrogatories, requests for production, and requests for admission that exceed the number of each allowed under a Level 1 discovery control plan.

Appellees also note that Appellants unfairly used the judicial process to test the waters in multiple district courts as they "gave themselves the option to wait and see whether to pursue the Marin survival and wrongful[-]death claims in the 141st District Court or the 352nd District Court." Appellees explain that they were required to

> expend time and resources preparing plea[s] in abatement[] in each of the two pending lawsuits to address the significant issues regarding the authority and capacity of these various claimants to pursue claims on behalf of the estate and the wrongful[-]death beneficiaries. . . . Significantly, Appellants actually *opposed* abatement on multiple occasions

16

and never moved to abate and compel arbitration here until after the secondary lawsuit [in the 352nd District Court] was dismissed.

Appellants' motion to compel arbitration also came at a time when they were facing multiple motions for summary judgment by the Appellees. Compelling arbitration at this time would deprive Appellees of the opportunity to have [the trial court] rule on their outstanding motions for summary judgment.

Appellees further state that "[n]ow, at this late hour, after much delay and expense, after adverse rulings, and in the face of multiple motions for summary judgment, [Appellants] seek to switch judicial horses with a fresh start on their claims in arbitration (with the benefit of discovery unavailable in arbitration)."

Based on the totality of the facts, we conclude that Appellants substantially invoked the litigation process to the detriment of Appellees by the time Appellants had filed their motion to compel arbitration. *See Leland Pennington*, 2021 WL 832690, at *8.

### 3. Disposition

Accordingly, we overrule Appellants' sole issue arguing that the trial court erred by denying their motion to compel arbitration.[15]

---

[15]Appellees include an argument in their brief that the "Marin Claimants" did not file a notice of appeal and that the amended notice of appeal's broad term— "Plaintiffs"—does not specifically reference the "Marin Claimants," so they should be bound by the trial court's order. Based on our disposition of Appellants' sole issue, Appellees' argument is moot. Moreover, we need not address Appellees' other arguments for upholding the trial court's order denying Appellants' motion to compel arbitration. *See* Tex. R. App. P. 47.1.

## IV. Conclusion

Having overruled Appellants' sole issue, we affirm the trial court's order denying Appellants' motion to compel arbitration.

/s/ Dabney Bassel

Dabney Bassel
Justice

Delivered:  September 30, 2021