# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-09-00438-CV

**Tressie A. Damron, Appellant**

**v.**

**Citibank (South Dakota) N.A., Appellee**

### FROM COUNTY COURT AT LAW NO. 1 OF TRAVIS COUNTY
### NO. C-1-CV-08-005823, HONORABLE ERIC SHEPPERD, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

In a suit to recover a credit-card debt, appellee Citibank (South Dakota), N.A. (Citibank) obtained a final summary judgment awarding it $5,478.98 on an account-stated claim against the debtor, appellant Tressie A. Damron. Damron appeals, contending that the trial court erred (1) in failing to exclude Citibank's summary-judgment affidavit; (2) in granting summary judgment on Citibank's account-stated claim; and (3) in granting summary judgment on a counterclaim asserted by Damron that was not addressed in Citibank's summary-judgment motion. We will affirm the trial court's judgment as to Citibank's account-stated claim, but reverse and remand as to Damron's counterclaim.

## BACKGROUND

It is undisputed that Citibank issued a credit card to Damron in 2003 and that Damron incurred charges on the account. In 2008, alleging that Damron had defaulted in making

required monthly payments, Citibank sued Damron, asserting causes of action for breach of contract, account stated, and debt. Citibank sought recovery of the outstanding balance owed by Damron, which it alleged to be $5,478.98, plus interest, costs, and attorney's fees. Citibank then moved for a traditional summary judgment based only on its account-stated claim. In support of its motion, Citibank relied upon the affidavit of Ramona Aragon, who testified that she is a "litigation analyst" with Citicorp Credit Services, Inc., a Citibank affiliate that provides debt-collection services for Citibank and other affiliated companies.[1] Attached to Aragon's affidavit were what purported to be reproductions of Damron's monthly account statements reflecting activity beginning when the account was opened in March 2003 and concluding with what Aragon termed a "final account statement" or "final billing statement" in February 2008. Aragon identified the attachments as accurate reproductions of Damron's monthly account statements from Citibank's computer records and proved them up as Citibank business records. Aragon further testified to a number of facts related to Damron's account, including that Damron had failed or refused to repay the amounts shown as due and owing on the monthly account statements. Aragon testified that according to information contained in Citibank's account records, Damron owed Citibank $5,478.98. The same balance was shown as due and owing in the "final account statement" attached to Aragon's affidavit.

Damron filed and served a response to Citibank's motion. In it, Damron objected to Aragon's affidavit on the grounds of hearsay and "evident lack of personal knowledge." Also, in

---

[1] Aragon explained that both Citibank and Citicorp Credit Services, Inc. are subsidiaries of Citigroup, Inc.

an attempt to raise a fact issue, Damron submitted an affidavit from James S. Damron, her counsel of record in this proceeding.[2] Mr. Damron averred that:

> I received and opened all correspondence that came to defendant from plaintiff concerning the transactions that are the subject matter of this suit. No final statement of account for transactions involved in this suit, including the one that plaintiff alleges was sent, was ever received by me or defendant.

> I made all the payments that were made on the alleged debt, and the payments that were made, when properly credited, were sufficient to pay all amounts lawfully owed.

In reply, Citibank objected to James Damron's affidavit as the unsupported statement of an interested witness and as "conclusory."

An oral hearing on Citibank's summary-judgment motion was scheduled for April 16, 2009, at 2:00 p.m. At 1:54 p.m. on that day, Damron filed a counterclaim in which she alleged that Citibank "has engaged in unconscionable and deceptive business practices in its dealings with defendant that have resulted in charges being made to defendant that were not owed . . . . [and] payments by defendant of money not owed," and sought actual and punitive damages. Also, at 1:56 p.m., Damron filed a motion to supplement her response to Citibank's summary-judgment motion with an objection to "any testimony in plaintiff's affidavit concerning the existence or contents of any cardmember agreement or other document not made a part of the affidavit." At the hearing, the trial court granted Damron's request to supplement her response. However, the record

---

[2] The record does not indicate whether Damron and her counsel, who shares her surname, are related.

does not reflect either that Damron explicitly requested leave to file her counterclaim or that the trial court explicitly granted such leave.

The trial court granted Citibank's motion and signed a final judgment awarding Citibank $5,478.98 on its claims against Damron. The court further ordered that Damron take nothing on her claims against Citibank. This appeal followed.

## ANALYSIS

In three issues on appeal, Damron argues that the trial court abused its discretion in failing to exclude Aragon's affidavit and attachments, erred in granting summary judgment on Citibank's account-stated claim, and erred in granting summary judgment on Damron's counterclaim because Citibank's motion did not address it.

### Standard of review

We review the trial court's summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). Summary judgment is proper when there are no disputed issues of material fact and the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Knott*, 128 S.W.3d at 215-16. In deciding whether there is a disputed material fact issue precluding summary judgment, we take as true proof favorable to the non-movant, and we indulge every reasonable inference and resolve any doubt in favor of the non-movant. *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995).

4

As a movant seeking summary judgment on its account-stated cause of action, Citibank had the initial burden of establishing its entitlement to judgment as a matter of law by conclusively establishing each element of that cause of action. *See M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000) (per curiam) (citing *Rhône-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 222-23 (Tex. 1999); *Oram v. General Am. Oil Co.*, 513 S.W.2d 533, 534 (Tex. 1974) (per curiam)). Assuming Citibank met this burden, the burden shifted to Damron to file a timely written response presenting grounds for denying summary judgment. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979). Grounds that Damron did not expressly present to the trial court by written response cannot be considered as grounds for reversal on appeal. Tex. R. Civ. P. 166a(c); *Clear Creek Basin Auth.*, 589 S.W.2d at 678. Citibank's motion must stand on its own merits, however, and thus Damron is not precluded from contending on appeal that the grounds presented in Citibank's motion were legally insufficient to entitle it to summary judgment. *Rhône-Poulenc*, 997 S.W.2d at 223 (citing *Clear Creek Basin Auth.*, 589 S.W.2d at 678). Additionally, Citibank bears the burden on appeal of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See id.*

We review the trial court's rulings concerning the admission or exclusion of summary-judgment evidence for an abuse of discretion. *See, e.g.*, *Fairfield Fin. Group, Inc. v. Synnott*, 200 S.W.3d 316, 319 (Tex. App.—Austin 2009, no pet.) (admission of summary-judgment evidence); *Cruikshank v. Consumer Direct Mortgage, Inc.*, 138 S.W.3d 497, 499 (Tex. App.—Houston [14th Dist.] 2004, pet. denied) (exclusion of summary-judgment evidence). An abuse of discretion exists only when the court's decision is made without reference to any

guiding rules and principles or is arbitrary or unreasonable. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). We must uphold the district court's evidentiary ruling if there is any legitimate basis for it. *See Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998). Moreover, we will not reverse a judgment based on a claimed error in admitting or excluding evidence unless the complaining party shows that the error probably resulted in an improper judgment. Tex. R. App. P. 44.1; *Malone*, 972 S.W.2d at 43; *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex. 1995). A successful challenge to a trial court's evidentiary rulings requires the complaining party to demonstrate that the judgment turns on the particular evidence excluded or admitted. *Texas Dep't of Transp. v. Able*, 35 S.W.3d 608, 617 (Tex. 2000).

**Aragon affidavit**

In her first issue, Damron contends that the trial court abused its discretion in failing to exclude the Aragon affidavit and attachments. Specifically, Damron urges that Aragon failed to demonstrate her personal knowledge underlying her testimony proving up the attached account statements as Citibank business records. This is ultimately a complaint that the trial court abused its discretion in failing to exclude the account statements as hearsay. To preserve this complaint for appellate review, Damron was required to obtain a ruling on her objection. *See, e.g.*, *McFarland v. Citibank (S.D.), N.A.*, 293 S.W.3d 759, 762 (Tex. App.—Waco 2009, no pet.); *Dulong v. Citibank (S.D.), N.A.*, 261 S.W.3d 890, 893 (Tex. App.—Dallas 2009, no pet.). Damron does not cite, nor have we found, any ruling by the trial court overruling her objection. Consequently, she failed to preserve the objection for appellate review. Tex. R. App. P. 33.1(a)(2).

Alternatively, to the extent Damron's complaint goes to the competence of Aragon's testimony and could be raised for the first time on appeal, *see Kerlin v. Arias*, 274 S.W.3d 666, 668 (Tex. 2008) (per curiam); *Sprayberry v. Siesta MHC Income Partners, L.P.*, No. 03-08-00649-CV, 2010 WL 1404598, at *2-4 (Tex. App.—Austin Apr. 8, 2010, no pet.) (mem. op.), we conclude that it is without merit. The gravamen of Damron's complaint is that there is some reason to doubt whether Aragon's testimony regarding Citibank's record-keeping procedures was based on her personal knowledge because she is employed by a Citibank affiliate rather than Citibank itself and is an "interested witness" who helps Citibank collect its debts. Damron further suggests that various statements by Aragon regarding Damron's account history "are highly suspect as coming from personal knowledge" and cast doubt on her claims to personal knowledge of Citibank record-keeping procedures. To the contrary, Aragon adequately demonstrates her competence to give the testimony she provided.

Aragon testified that in her role as litigation analyst, she is required to have knowledge regarding Citibank's policies and procedures and that she has acquired personal knowledge regarding how account records are made and kept by Citibank. She added that she has access to Citibank account records and is "required to be familiar with facts regarding account holders who are involved in active litigation with [Citibank]." In that role, Aragon explained, she acquired access to and knowledge regarding Damron's account records. Aragon then identified the attachments as true and correct copies of Damron's account statements and proved them up as Citibank business records. She went on to offer observations and conclusions based on the account records and her knowledge of Citibank's record-keeping procedures, including

7

summarizing Damron's account activity, Citibank's imposition of interest and charges, Damron's default, and the amount Damron ultimately owed.

Contrary to what Damron suggests, the rules of evidence do not require that the qualified witness who lays the predicate for the admission of business records be their creator or have personal knowledge of the contents of the record; the witness is required only to have personal knowledge of the manner in which the records were kept. *See* Tex. R. Evid. 803(6), 902(10); *see also Bridges v. Citibank (S.D.) N.A.*, No. 02-06-00081-CV, 2006 WL 3751404, at *2 (Tex. App.—Fort Worth Dec. 21, 2006, no pet.) (mem. op.) (citing *In re K.C.P.*, 142 S.W.3d. 574, 578 (Tex. App.—Texarkana 2004, no pet.)). We conclude that Aragon's testimony adequately demonstrated the basis for her personal knowledge of the manner in which Citibank kept its records and the other facts to which she testified. Other Texas courts have considered similar affidavit testimony by other Citibank "servicer" personnel as adequate to establish the basis for the affiants' personal knowledge and competence. *See, e.g.*, *McFarland*, 293 S.W.3d at 762 (affidavit "not conclusory" because based on "personal knowledge derived from her work as a Litigation Analyst"; provided proper basis for admitting business records); *Wynne v. Citibank (S.D.) N.A.*, No. 07-06-000162-CV, 2008 WL 1848286, at *2 (Tex. App.—Amarillo Apr. 25, 2008, pet. denied) (mem. op.); *Jones v. Citibank (S.D.), N.A.*, 235 S.W.3d 333, 337 (Tex. App.—Fort Worth 2007, no pet.); *Hay v. Citibank (S.D.) N.A.*, No. 14-04-01131-CV, 2006 WL 2620089, at *3 (Tex. App.—Houston [14th Dist.] Sept. 14, 2006, no pet.) (mem. op.). We overrule Damron's first issue.

**Citibank's account-stated claim**

In her second issue, Damron argues that the trial court erred in granting summary judgment on Citibank's account-stated claim. The elements of the common-law cause of action for account stated are: (1) transactions between the parties give rise to indebtedness of one to the other; (2) an agreement, express or implied, between the parties fixes an amount due; and (3) the one to be charged makes a promise, express or implied, to pay the indebtedness. *Busch v. Hudson & Keyse, LLC*, 312 S.W.3d 294, 299 (Tex. App.—Houston [14th Dist.] 2010, no pet.); *Dulong*, 261 S.W.3d at 893. Because the requisite agreement can be express or implied, the plaintiff need not adduce evidence of a written cardmember contract, but can instead present evidence of acts and conduct by the parties that give rise to an implied agreement fixing an amount due and that the defendant agreed to pay the indebtedness. *See Busch*, 312 S.W.3d at 299; *Dulong*, 261 S.W.3d at 894. Such acts and conduct may include the cardholder's use of the card to make purchases, the cardholder's making of payments on the account, and the cardholder's acquiescence in the card issuer's imposition of interest, fees, and charges. *See Busch*, 312 S.W.3d at 299-300; *Dulong*, 261 S.W.3d at 894.

Aragon's affidavit and the attached monthly statements reflected that Citibank issued Damron a credit card in March 2003. Thereafter, Citibank mailed, to the same address for Damron each time, monthly statements showing extensions of credit, the applicable interest rate or rates, interest charges and any fees imposed, and the amount of any payments by Damron. Damron maintained a zero balance until September 25, 2003, when she made a balance transfer of $4,499.00—$1.00 below her $4,500 credit limit. Thereafter, on May 11 and 12, 2005, Damron

9

made two purchases. Interest was charged on these extensions of credit at varying rates and over-limit and late fees were periodically assessed. In response to the monthly statements, Damron made payments on the account, generally the minimum monthly payment specified on the statement. Damron twice made larger payments that would have almost satisfied the account balance, but both times her payment was returned for insufficient funds. There was no indication in the account records that Damron ever objected to or disputed any charges or fees Citibank imposed prior to Citibank's filing suit. Damron ceased making payments after July 30, 2007. Citibank continued to send monthly statements to her until February 2008. At that point, Aragon testified and the statements reflected, Damron owed Citibank $5,478.98. This evidence meets Citibank's summary-judgment burden to establish a series of transactions between Citibank and Damron, as well as acts and conduct establishing that Citibank and Damron had an implied agreement fixing an amount due equal to the cash advance she received and the purchases she made, less payments and credits to her account, plus interest and fees, and that Damron impliedly promised to pay Citibank the amount due. *See, e.g.*, *McFarland*, 293 S.W.3d at 763; *Dulong*, 261 S.W.3d at 894.

Damron argues that Citibank was not entitled to summary judgment on its account-stated claim because Citibank "judicially admitted" there was an express cardmember agreement governing the parties' transactions. However, as previously noted, Citibank was not required to prove the agreement's existence solely through evidence of the express cardmember agreement, but could rely instead on evidence of the parties' acts and conduct that established an agreement by implication. *See Busch*, 312 S.W.3d at 299; *Dulong*, 261 S.W.3d at 894. Damron also argues that Citibank could not recover on an account-stated claim because the transactions sued upon did not

involve the transfer of title to goods or services from Citibank to Damron. However, an account-stated claim does not require proof that the sued-upon transactions involved the transfer of title to goods or services between the parties. *See Dulong*, 261 S.W.3d at 893 & n.3. Damron seems to confuse the elements of the common-law cause of action for account stated with the requirements for a suit on an account under Texas Rule of Civil Procedure 185. *See id.* Citibank has asserted an account-stated cause of action independent of rule 185.

Damron also insists that the affidavit of James S. Damron raises a fact issue that precludes summary judgment. Specifically, Damron relies on the statement that, "No final statement of account for transactions involved in this suit, including the one that plaintiff alleges was sent, was ever received by me or defendant." Damron evidently assumes that the existence of the requisite implied agreement and promise to pay rests solely upon proof of her acquiescence to Citibank's final account statement after receiving it. However, Citibank's summary-judgment evidence also included proof—which remains uncontroverted—that Damron received all prior monthly statements, that the statements reflected her outstanding account balance and the interest rate or rates being charged, that Damron never objected to or disputed any charges, and that the final amount due and owing was $5,478.98. This uncontroverted evidence establishes Citibank's entitlement to judgment as a matter of law on its account-stated claim. *See, e.g.*, *McFarland*, 293 S.W.3d at 763; *Dulong*, 261 S.W.3d at 894. We overrule Damron's second issue.

**Damron's counterclaim**

In her third issue, Damron asserts that the trial court erred in granting summary judgment as to her literally last-minute counterclaim because Citibank's summary-

11

judgment motion failed to address it. *See McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex. 1993) ("A [summary-judgment] motion must stand or fall on the grounds expressly presented in the motion."). In response, Citibank argues only that the counterclaim was not before the trial court, insisting that the record belies the court's having impliedly granted leave for Damron to file her counterclaim late and considered it. *See Goswami v. Metropolitan Savings & Loan Ass'n*, 751 S.W.2d 487, 490 (Tex. 1988) (holding that if record offers no basis to conclude that late pleading was not considered by the trial court and opposing party does not show surprise or prejudice, leave of court to file late pleading is presumed). We disagree with Citibank. The final judgment reflects that the trial court considered the counterclaim, as it explicitly rendered judgment that Damron take nothing on her claims. Because Citibank's motion did not address the counterclaim, summary judgment on it was error. *See Smith v. Heard*, 980 S.W.2d 693, 697-98 (Tex. App.—San Antonio 1998, pet. denied).[3] We sustain Damron's third issue.

## CONCLUSION

Having overruled Damron's issues challenging summary judgment as to Citibank's account-stated claim, we affirm that portion of the trial court's judgment. However, because the judgment indicates or we must presume that the trial court considered Damron's counterclaim when granting summary judgment, and this claim was not addressed in Citibank's

---

[3] As the issue has not been raised, we express no opinion regarding the viability of Damron's counterclaim in the face of our judgment affirming summary judgment on Citibank's account-stated claim.

12

summary-judgment motion, we must reverse this portion of the trial court's judgment and remand for further proceedings.

_____

Bob Pemberton, Justice

Before Chief Justice Jones, Justices Puryear and Pemberton

Affirmed in part; Reversed and Remanded in part

Filed:   August 25, 2010